STATE OF NORTH CAROLINA v. RAYMOND EUGENE DULL, JR.

No. 98

(Filed 17 December 1975)

1. Kidnapping § 1; Rape § 5— first degree rape — use of knife — kidnapping — sufficiency of evidence

Evidence was sufficient to be submitted to the jury in a prosecution for first degree rape and kidnapping where it tended to show that defendant got into his victim's automobile and grabbed her by the hair with his left hand and held an open knife to her throat with his right hand, the victim was afraid, defendant instructed his victim to drive away, he later ripped off the victim's clothes, suggested intercourse, and told the victim he would kill her if she did not cooperate, defendant raped his victim and then discussed her own murder with her, defendant let his victim go, and the knife used in the rape was later found in the living quarters of defendant; and it was not necessary that defendant continue to display the deadly weapon in a threatening manner until the moment of rape, rather, once the defendant had exhibited the knife and threatened the life of the victim with it, the knife continued in use as long as it was accessible to defendant. G.S. 14-21 (a) (2).

2. Rape § 6— second degree rape — jury instructions — no error

Defendant cannot complain of any error in the trial court's instruction on second degree rape concerning use of a deadly weapon as an element of second degree rape since such an instruction would be beneficial to defendant, by its verdict the jury found that a deadly weapon was used, and any confusion in the jury's mind was cleared up by the court's additional instructions on first and second degree rape.

**3. Constitutional Law 36; Rape § 7— first degree rape — death penalty — constitutionality**

Imposition of the death penalty upon a conviction of first degree rape was not cruel and unusual punishment.

APPEAL by defendant from *Seay, J.*, at the 26 May 1975 Session of IREDELL Superior Court.

By separate indictments, proper in form, defendant was charged with the first-degree rape and kidnapping of Marcia Joanette Barnes on 11 January 1975. The jury found him guilty as charged in each bill of indictment. He was sentenced to death for first-degree rape and to life imprisonment for kidnapping.

The State's evidence, in summary, was as follows: Marcia Joanette Barnes testified that she is eighteen years of age and lives in Statesville, North Carolina. On 11 January 1975 she was on a weekend visit with her parents from Appalachian State University where she was a freshman. About 5:40 p.m. Marcia borrowed her mother's 1974 Caprice Chevrolet automobile and went to the Signal Hill Mall in Statesville to shop. This took less than an hour. When she got in her car to return home and started backing out, she observed someone behind her car and stopped for fear of hitting him. The person Marcia had seen, whom she later identified as the defendant, jumped in the car on the passenger's side, pulled her head back with his left hand, and put an open knife at her throat with his right hand. She had never seen him before and was told to do as he said and she would not get hurt. While he held a knife at her throat, he directed her to drive the car toward Interstate 77. Sometime before they reached Interstate 77, the defendant put the knife away. Later he inquired about her age and she told him she was eighteen years old. After traveling a short distance on Interstate 77, the defendant directed her to stop the vehicle, which she did. He grabbed her, ripped off her blouse and bra, held her by her throat against the car window, and told her that if she did not do what he said, she "would not live to be nineteen." He suggested sexual intercourse in a vulgar manner. During this time, Marcia did not recall seeing the knife. She was required to lie down on the front seat and put her head on his leg while he fondled her body. The defendant then moved over to the driver's side and Marcia was required to move over and lie down on the seat. Thereupon, the defendant drove off, and after several turns he stopped the car on a dirt road.

It was then that the defendant made her get in the back seat. Shortly, the defendant removed his clothes and got in the back seat himself. He told her to take off her clothes, but she refused; so he removed them. Marcia did not run because she did not know where to run and was afraid for her life. She thought he was going to kill her because he had a knife and had choked her. She begged him to take her home, but the defendant made her lie down on the seat and with some difficulty raped her. After dressing, the defendant told her to get out of the car and she did. It was then that he discussed with Marcia her own murder. She tried to convince him he would be in more trouble if he killed her, but the defendant replied it would make no difference as the penalty for rape was the same as for murder. Marcia convinced the defendant she would not tell on him, and he carried her back to the Signal Hill Mall parking lot. He told her he was sorry and she told him to get out, which he did. She went home, arriving about 7:00 p.m. and reported everything that had happened to her parents. The police were called and they arrived at 7:20 p.m. A medical examination was made about 7:45 p.m. which revealed her female organs had been bruised and penetrated on that date with live moving sperm being present. Marcia was so upset that the doctor could not talk to her and he gave her a sedative.

Detective Sergeant K. E. Shawver testified as to the statement the victim gave him later that night. In substance, she told the officer the defendant put the knife to her throat, choked her, and later told her she would not live to be nineteen if she did not cooperate with him. The statement substantially corroborated Marcia's testimony.

After making an investigation at the Signal Hill Mall, Sergeant Shawver and three other officers went to the trailer park home of the defendant and took him into custody. When they arrived the defendant was in the bathroom where he had superficially cut his wrist and was bleeding. The knife, which was identified as looking like the one used in the alleged rape and kidnapping, was found in the bathroom at defendant's feet.

The defendant testified in his own behalf and this tended to show the following: He had known the prosecuting witness prior to 11 January 1975, having met and spoken to her on two other occasions. However, he could not say positively when or where this took place. He had never been out with her. On this night he met the victim coming out of Belk's in the Mall and

talked to her. He suggested they ride around for a while and talk and she agreed. They went to the car where she gave him the keys. After a few moments in the car he told her they were going to ride around. They went to the places she had indicated, but he did not force her to take her clothes off and he did not rape her. They parked in a field about one hour and had sexual relations twice, but he did not force her in any way. He admitted that the pocket knife found in his home looked like the one he had in his possession that night, but said he never removed it from his pocket while with Marcia. He used obscene language, kissed her and fondled her. She was reluctant at first, but, after they had smoked some marijuana, her morals relaxed and she did not object too much. The prosecuting witness never asked him to carry her back to the Mall.

Defendant was cross-examined by the district attorney and said he had no explanation for cutting his wrist and did not remember it; that in addition to smoking marijuana, he took some Donaral pills; that he gave a statement to the police after he had been advised of his constitutional rights. Several of the things in the statement he did not recall. When shown the statement, which he admitted writing and signing, he did not remember saying that the victim was crying and he did not remember saying that she asked him if he was going to kill her. He said that if he put this down, it was because he was scared. He did not remember that he told them that he ripped off her blouse or that when they got back to the Mall she said she wanted to forget what happened. Neither did he remember telling the police that he told her he would never forget and felt like some kind of monster. In sum, he remembered very little about what he told police on the night he was arrested.

*Attorney General Rufus L. Edmistem by Deputy Attorney General Millard R. Rich, Jr. and Associate Attorney James Wallace, Jr., for the State.*

*Jay F. Frank for defendant appellant.*

COPELAND, Justice.

[1]  In the first two assignments of error the defendant contends that the court erred in denying his motion for nonsuit made at the close of the State's case and at the close of all the evidence as to both rape and kidnapping. In essence he says the State failed to prove the essential element of procuring sub-

mission by the use of a deadly weapon as to the rape charge, or the use of force in the kidnapping charge.

The defendant was tried and convicted for first-degree rape under the provisions of G.S. 14-21(a)(2) (Chapter 1201, Session Laws of 1973, effective 8 April 1974), which reads as follows:

> "If the person guilty of rape is more than 16 years of age, and the rape victim had her resistance overcome or her submission procured by the use of a deadly weapon, or by the infliction of serious bodily injury to her, the punishment shall be death."

Rape is defined as the carnal knowledge of a female person by force and against her will. *State v. Crawford,* 260 N.C. 548, 133 S.E. 2d 232 (1963); *State v. Thompson,* 227 N.C. 19, 40 S.E. 2d 620 (1946); 6 Strong, N. C. Index 2d, Rape, § 1; G.S. 14-21.

The distinguishing features between the former law and that provided in G.S. 14-21 are that rape is now divided into two degrees, and that G.S. 14-21(a)(2) now requires that the "force" be such that "the rape victim had her resistance overcome or her submission procured by the use of a deadly weapon, or . . . . " Under the former law, the "force" that was necessary to constitute an offense did not need to be actual physical force. Constructive force was sufficient, and the female submission under fear or duress took the place of actual physical force. *State v. Thompson, supra; State v. Johnson,* 226 N.C. 671, 40 S.E. 2d 113 (1946). This is the same "force" now required to convict for second-degree rape. G.S. 14-21(b).

Under the old law, where all the evidence tended to show that the defendant had·sexual intercourse with the prosecutrix without her consent and she submitted when she was helpless to protect herself because the submission was induced by fear of death or serious bodily harm, then motion for nonsuit was held to be properly denied. *State v. Williams,* 275 N.C. 77, 165 S.E. 2d 481 (1969). "A woman who consents out of fear of personal violence does not consent at all. Even though no physical force is actually used, if the potential force is shown by the man to the woman so as to paralyze by fear her will to resist, or if she ceased resistance through fear of great harm, the consummation of unlawful intercourse by the man is rape." 65 Am. Jur. 2d, Rape, § 11 at 767.

In our case there is ample and credible evidence that the defendant got in the automobile and grabbed the prosecutrix by the hair with his left hand and held the open knife to her throat with his right hand. She was afraid. The defendant told her to do what he said and she would not get hurt. The engine of the automobile was already running and, at his direction, she drove the vehicle out of the parking lot.

She testified: "When I was parked on the side of the road, he grabbed me and ripped my blouse—ripped off my bra, and I was trying to resist him. He grabbed me by the throat and held me up against the driver's side of the window and told me if I didn't do what he said, that I wouldn't live to be nineteen." The defendant was in possession of a knife and threatened her with it, telling her that if she did not cooperate, it would lead to her death. The defendant said or did nothing prior to having sexual intercourse with her to indicate that he no longer had the knife in his possession or that he no longer intended to use the knife if she did not cooperate. All of this showed that the prosecutrix was in a situation where she feared for her life and the slightest objection might very well have been fatal. After the alleged rape, the defendant required her to get out of the car and then discussed with her, her own murder. By her pleas she was able to save her life. The knife itself was later found in the living quarters of the defendant, who identified it as looking like his knife.

If the evidence of the State as to the rape charge is to be believed, it is clear that the requirements of G.S. 14-21(a)(2) were met and that the submission of the prosecutrix was procured by the use of the open knife that the defendant placed at her throat when he first encountered her. The law does not require a vain thing and certainly it does not require that the defendant must continue to display the deadly weapon in a threatening manner until the moment of the rape. The defendant told the prosecutrix she would not live to be nineteen if she did not cooperate with him. She had every reason to believe that he would carry out his threat to kill her. Once the defendant had exhibited the knife and threatened the life of the prosecutrix with it, the knife continued in use as long as it was accessible to him.

As to the evidence on the charge of kidnapping, the element of force was shown not only by the use of the knife, but also by other physical force that continued from the moment de-

State v. Dull

fendant entered the victim's car until he returned her to the Mall.

There is a wealth of authority in this State on the subject of nonsuit. Generally speaking, in a motion for nonsuit the evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference therefrom. *State v. Overman,* 269 N.C. 453, 153 S.E. 2d 44 (1967) ; *State v. Cade,* 268 N.C. 438, 150 S.E. 2d 756 (1966) ; *State v. Spears,* 268 N.C. 303, 150 S.E. 2d 499 (1966) ; *State v. Bridgers,* 267 N.C. 121, 147 S.E. 2d 555 (1966). There was ample evidence to submit this case to the jury on first-degree rape and kidnapping and these assignments are overruled.

[2]   Next, the defendant argues that the court was in error in failing to give a clear definition of second-degree rape, and that the court confused the jury by mentioning the use of a deadly weapon in its definition of second-degree rape.

The particular instruction that the defendant complains about is as follows:

"Second-degree rape differs from first-degree rape in that it is not necessary for the State to prove that the defendant was more than sixteen years of age, or that he overcame Marcia Barnes' resistance or procured her submission by the use of a deadly weapon. So I charge that if you find from the evidence beyond a reasonable doubt that on or about January 11, 1975, in Iredell County, Raymond Eugene Dull, Jr. did by the use of force—pulling her head back by her hair, *threatening her with a knife,* choking her, using his hands on her body—did forcibly have sexual intercourse with Marcia Barnes; that he did so without her consent and against her will, it would be your duty to return a verdict of guilty of second-degree rape; . . . " (Emphasis supplied.)

The defendant maintains that the trial judge by mentioning the use of a knife while charging the jury on second-degree rape confused the jury as to the true elements of second-degree rape. Defendant contends that he may well have been found guilty of second-degree rape if the judge had charged more clearly. However, it seems clear to us that if the jury was led to believe that the use of the knife was an element of second-degree rape, then this would have been beneficial to the defendant and he could not complain. At any rate, the jury by its

verdict found that a deadly weapon was used and that the rape was accomplished when the defendant overcame the resistance of the prosecutrix by the use of the knife. Moreover, after the jury had deliberated for some time, it returned to the court-room and requested further instructions as to first-degree rape. The court then gave a proper charge as to first-degree rape and also re-instructed the jury on second-degree rape and par-ticularly told them it was not necessary that her submission be secured by the use of a deadly weapon in second-degree rape. If there was any confusion in the jury's mind, this certainly cleared it up.

Assuming *arguendo* that there was technical error, we feel that it was harmless error beyond a reasonable doubt. The evi-dence at the trial overwhelmingly pointed to defendant's guilt. *Harrington v. California,* 395 U.S. 250, 23 L.Ed. 2d 284, 89 S.Ct. 1726 (1969) ; *Chapman v. California,* 386 U.S. 18, 17 L.Ed. 2d 705, 87 S.Ct. 824 (1967).

Next, the defendant contends that the court erred in deny-ing the motions to set aside the verdict as being against the greater weight of the evidence, for judgment notwithstanding the verdict, and for a new trial.

A motion to set aside the verdict as being against the greater weight of the evidence is addressed to the discretion of the trial court, and the court's refusal to grant the motion is not reviewable on appeal. *State v. Bridgers, supra; State v. Mitchner,* 256 N.C. 620, 124 S.E. 2d 831 (1962) ; *State v. Downey,* 253 N.C. 348, 117 S.E. 2d 39 (1960) ; *State v. Reddick,* 222 N.C. 520, 23 S.E. 2d 909 (1943). *See also* 3 Strong N. C. Index 2d, Criminal Law, § 132. A motion for a new trial does not properly present the question of the sufficiency of the evi-dence to justify the submission of the case to the jury. *State v. Gaston,* 236 N.C. 499, 73 S.E. 2d 311 (1952) ; *State v. Caper,* 215 N.C. 670, 2 S.E. 2d 864 (1939) ; 3 Strong, N. C. Index 2d, *supra.* This is more properly raised by a motion for nonsuit, which has been discussed earlier in this opinion. 3 Strong, N. C. Index 2d, *supra.* Certainly the trial court did not abuse its dis-cretion for the State's evidence was overpowering. The assign-ment is overruled.

[3]  Finally, defendant contends the court erred in sentencing him to death, saying this was cruel and unusual punishment.

Klein v. Insurance Co.

Our Court has consistently rejected this argument. No new issue has been raised here. We do not deem it necessary to set forth again the reasoning of these cases. *State v. Robbins,* 287 N.C. 483, 214 S.E. 2d 756 (1975); *State v. Vinson,* 287 N.C. 326, 215 S.E. 2d 60 (1975); *State v. Armstrong,* 287 N.C. 60, 212 S.E. 2d 894 (1975); *State v. Vick,* 287 N.C. 37, 213 S.E. 2d 335 (1975); *State v. Stegmann,* 286 N.C. 638, 213 S.E. 2d 262 (1975); *State v. Honeycutt,* 285 N.C. 174, 203 S.E. 2d 844 (1974); *State v. Dillard,* 285 N.C. 72, 203 S.E. 2d 6 (1974); *State v. Henderson,* 285 N.C. 1, 203 S.E. 2d 10 (1974); *State v. Noell,* 284 N.C. 670, 202 S.E. 2d 750 (1974); *State v. Jarrette,* 284 N.C. 625, 202 S.E. 2d 721 (1974); *State v. Waddell,* 282 N.C. 431, 194 S.E. 2d 19 (1973). The assignment is overruled.

In our careful review of this entire record we find

No error.