STATE OF NORTH CAROLINA v. JAMES DOUGLAS HARRILL

No. 94

(Filed 29 January 1976)

1. Criminal Law § 91— motion for continuance — denial proper

The trial court did not err in denying defendant's motion for continuance made on the grounds that he did not receive a copy of the very complicated autopsy report of the victim until seven days prior to the time the motion was heard and that defendant was not discharged from Dorothea Dix Hospital until 21 April 1975, after being confined there for the previous month, and trial began on 13 May 1975.

2. Criminal Law § 15; Jury § 2— change of venue or special venire — denial of motion — failure to show abuse of discretion

Defendant failed to show abuse of discretion by the trial court in denying defendant's motion for a change of venue or for a special

venire from another county where the accounts carried by the local news media did not appear to have been beyond the bounds of propriety, the prominence of the victim did not unfairly affect the trial, and defendant failed to include in the record the *voir dire* examination of the jury, thereby failing to show that defendant exhausted his peremptory challenges, that he had to accept any juror objectionable to him, or even that any juror had prior knowledge or opinion as to this case.

3. **Criminal Law § 88— limitation of cross-examination — evidence subsequently admitted**

Defendant failed to show prejudicial error of the trial court in refusing to allow him to cross-examine a witness as to the cause of decedent's death where the record failed to show what the witness would have said had he been allowed to answer certain questions and where the witness elsewhere during cross-examination substantially answered the defendant's inquiry.

4. **Criminal Law § 99— voir dire examination — conduct of trial court**

During a *voir dire* examination to determine the admissibility of a confession purportedly made by defendant two hours after the crime, the trial court did not err in striking an opinion of an expert witness, in overruling defendant's objection to a question by the State which interrupted the testimony of the expert witness while being cross-examined by the State, or in striking part of the testimony of defendant's witness when there was no objection on the part of the State to the testimony stricken.

5. **Criminal Law § 102— tendered guilty plea not in evidence — jury argument improper**

The trial court did not err in refusing to permit defendant's counsel to argue to the jury his tender of a plea of guilty to second degree murder which the State refused to accept, since no evidence of the tendered plea of guilty was offered to the jury, and counsel may not inject into his jury argument facts not included in the evidence.

6. **Criminal Law § 114— "confession" — "vicious and brutal killing" — use in jury charge — no expression of opinion**

The trial court in a first degree murder prosecution did not express an opinion in its charge to the jury by erroneously using the terms and phrases, "The defendant confesses," "that confession," "confession," "vicious and brutal killing," and "vicious and brutal slaying."

APPEAL by defendant under G.S. 7A-27 (a) from *Friday, J.*, at the 12 May 1975 Session of RUTHERFORD County Superior Court.

Defendant was charged in a bill of indictment, proper in form, with the first-degree murder of William Cephus Morris on 22 January 1975. The defendant tendered a plea of guilty to

second-degree murder, which the State would not accept, and thereupon the defendant pleaded not guilty. The jury found the defendant guilty of first degree murder (felony murder) and the Court sentenced him to death.

The State's evidence, in summary, is as follows: On 21 January 1975 the defendant went to the Union Trust Bank office at Ellenboro, North Carolina, in Rutherford County to change some money. On 22 January 1975 at 9:20 a.m. he entered the same bank wearing a mask and brandishing a gun. He demanded that the bank tellers fill a pillow case with money. While they were complying with his demand, a customer of the bank, William Cephus Morris, was standing nearby. He had just cashed 2 checks. The defendant told Morris to give him what he had in his hand and within a matter of seconds shot Morris, who fell to the floor. These activities were recorded on film, and the film was received into evidence for illustrative purposes. Morris died on 31 January 1975 as the result of a gunshot wound. After receiving the money, including a series of marked $20 bills, the gunman fled the scene in a green car with a West Virginia license plate. This information was furnished to the law enforcement officials, and at 9:55 a.m. a State Highway Patrolman stopped a green Camaro Chevrolet driven by the defendant at the intersection of Highways 64 and 226 in Burke County, North Carolina. Subsequent to the defendant being removed from the car, a .357 magnum pistol was seen on the floor of the automobile. This was removed and taken into the possession of the Highway Patrolman. Also taken from the car was a pillow case containing $5,862.14, which included $1,000 in marked $20 bills, later identified as having been taken from the bank. Defendant was arrested and given Miranda warnings. His confession was received into evidence after a voir dire hearing had been held and proper findings of fact and conclusions of law had been made by the trial court.

The defendant offered no evidence.

Other pertinent facts and circumstances will be referred to in the opinion.

*Attorney General Rufus L. Edmisten by Assistant Attorney General James E. Magner, Jr., for the State.*

*J. H. Burwell, Jr., and George R. Morrow for defendant appellant.*

COPELAND, Justice.

[1]   The defendant first contends that the court erred in denying his motion for continuance and, thus, in violation of the Federal and State Constitutions deprived him of an opportunity fairly to prepare and present his defense. The reasons given for making the motion were that he did not receive a copy of the very complicated autopsy report of the victim until 6 May 1975 and that defendant was not discharged from Dorothea Dix Hospital in Raleigh, North Carolina, until 21 April 1975, after being confined there for the previous month.

Since the motion for continuance was based on a right guaranteed by the Federal and State Constitutions, the decision of the trial judge is reviewable as a question of law without a prior determination that there has been a gross abuse of discretion. *State v. Smathers,* 287 N.C. 226, 214 S.E. 2d 112 (1975). The defendant relies heavily on *Smathers,* but the facts are obviously distinguishable. In *Smathers* the defendant had reasonable grounds to believe that he was only charged with a misdemeanor until the day of the trial when he found out he was charged with a felony which could lead to imprisonment for life. We do not have that type of situation here. The defendant was properly charged with 1st degree murder in a warrant and later by bill of indictment. A new trial will be awarded because of a denial of a motion for continuance only if the defendant shows that there was error in the denial and that the defendant was prejudiced thereby. *State v. Robinson,* 283 N.C. 71, 194 S.E. 2d 811 (1973) ; *State v. Phillip,* 261 N.C. 263, 134 S.E. 2d 386 (1964).

A careful examination of the record indicates that there was neither error nor prejudicial error. Counsel for the defendant was appointed in February, 1975, shortly after the arrest of the defendant for murder on 31 January 1975. The defendant was indicted on 10 March 1975, his case was initially called for trial on 17 March 1975, and by his own motion an order was obtained delaying the trial and committing the defendant to Dorothea Dix from 21 March to 21 April 1975 to determine his mental competency to stand trial. The record indicates that the court session began 12 May 1975, this case was called and this motion heard on 13 May 1975, and the jury was empaneled on 14 May 1975. Thus, the defendant had access to the autopsy report for seven days prior to the time this motion was heard, and counsel had approximately three months to prepare for

State v. Harrill

trial and consult with the defendant. Although he contends that the autopsy report was too complicated to permit adequate preparation during this period, he failed to put the autopsy report into evidence. Furthermore, the testimony admitted as to the cause of death indicated there was ample time for preparation. Certainly, under these circumstances there was no error shown.

The defendant's contention that the denial of the continuance was erroneous for the reason that the trial judge did not exercise his discretion in making his ruling is without merit. Although the court was mistaken in its belief that at the time of this trial there was a statutory deadline for making the motion for continuance and that it had not been satisfied, the court's later statements plainly indicated that it would consider the motion under its discretionary power independently of the requirement of the statutory deadline and that it did properly exercise its discretion after hearing the arguments of counsel.

Additionally, the defendant has failed to show that he has been prejudiced by the denial of the continuance. The evidence of the State is overwhelming, and there is no evidentiary support for the defendant's theory that he would have been able to show that the victim was not killed as the result of the gunshot wound if the continuance had been granted.

For the above reasons this assignment of error is without merit and overruled.

[2] The defendant assigns as error the denial of his motion for a change of venue or for a special venire from another county. This motion was based on the ground that the prominence of the victim and the inflammatory publicity from local news media, as well as discussions from church pulpits, would prevent a fair trial.

The defendant's motion is addressed to the sound discretion of the trial judge, and an abuse of discretion must be shown before there is any error. *State v. Blackmon*, 280 N.C. 42, 185 S.E. 2d 123 (1971).

The defendant's contention that the denial of his motion was an abuse of discretion for the reason that the trial judge did not properly exercise his discretion in making his ruling is without merit. The record plainly discloses that the judge indicated he would consider the motion under his discretionary

power independently of the statutory deadline for making the motion which he mistakenly believed to exist. The judge heard the arguments of counsel and pointed out that on his own motion he had ordered special jurors and that the arguments advanced by the defendant could be taken care of on voir dire examination of prospective jurors. The accounts carried by the local news media do not appear to have been beyond the bounds of propriety or to have been inflammatory. The prominence of the victim does not seem to have unfairly affected the trial. Since the defendant failed to include in the record the voir dire examination of the jury, the record does not disclose that the defendant exhausted his peremptory challenges, that he had to accept any juror objectionable to him, or even that any juror had prior knowledge or opinion as to this case. Under these circumstances, no abuse of discretion has been shown. *State v. Thompson*, 287 N.C. 303, 214 S.E. 2d 742 (1975). This assignment of error is overruled.

[3] Next the defendant complains that the court erred in refusing to allow him to cross-examine Dr. Bass as to the cause or causes of the decedent's death.

"One of the most jealously guarded rights in the administration of justice is that of cross-examining an adversary's witnesses." 1 Stansbury's North Carolina Evidence § 35, at 100 (Brandis Rev. 1973) ; *accord, Barnes v. Highway Commission*, 250 N.C. 378, 394, 109 S.E. 2d 219, 232 (1959). *See also State v. Hightower*, 187 N.C. 300, 121 S.E. 616 (1924). The appellant has the burden of showing not only error but also prejudicial error. *State v. Robinson*, 280 N.C. 718, 187 S.E. 2d 20 (1972).

The doctor had testified on direct examination that the actual final event that caused the decedent's death was massive hemorrhage due to multiple ulcers of the stomach, referred to as stress ulcers, brought on by the combination of severe trauma and multiple episodes of shock, resulting from a penetration wound of the abdomen apparently caused by gunshot.

On cross-examination the doctor described stress ulcers as usually being a result of "sudden traumatic or sudden onset of injuries." He indicated that the victim did have emphyzema at the time, that he had never heard of a case of stress ulcers as the result of emphyzema, but that it could happen and nothing was beyond the realm of possibility.

The record indicates that the defendant then asked a series of questions to determine if the victim had an ulcer prior to sustaining the traumatic injury from the gunshot wound to such an extent that it might have been the cause of decedent's death rather than the ulcers resulting from the gunshot wound. Although numerous objections of the State were sustained, no prejudice has been shown since the defendant failed to have answers to these questions placed in the record and Dr. Bass elsewhere during cross-examination substantially answered the defendant's inquiry. Dr. Bass testified that he had never seen the decedent before this incident and there were no ulcers at the holes where he observed the gunshot wounds when he operated on 22 January 1975, nine days before the death of the deceased. The doctor stated that he was not able to determine whether there were any ulcers before the injuries resulting from the gunshot wounds since he did not examine the stomach other than the holes. He concluded that the man's death resulted from a series of events which were initiated by the gunshot wound. This assignment of error is overruled.

[4] The defendant contends that during the voir dire examination to determine the admissibility of the confession that the defendant purportedly made approximately two hours after the alleged crime, the court erred in sustaining the State's objections to questions asked Dr. James Groce and in striking his opinions. Dr. Groce, who was accepted by the court as an expert in psychiatry, had examined the defendant from 21 March (58 days after the shooting) to 21 April 1975 at Dorothea Dix Hospital.

The record discloses that the court allowed a single motion to strike an expert opinion given by Dr. Groce. Otherwise, no answers of Dr. Groce to questions to which the State's objections had been sustained were placed in the record for purposes of appellate review except insofar as the court later permitted answers to similar questions to be admitted into evidence for purposes of this voir dire examination. Furthermore, the court later during this voir dire examination received into evidence substantially the same opinion that was stricken. Under these circumstances no prejudicial error has been shown. This assignment of error is overruled.

Next, the defendant complains that the trial court erred in overruling his objection to a question by the State which interrupted the testimony of Dr. Groce while being cross-examined

by the State during the same voir dire examination discussed above. The defendant contends the trial judge in this manner refused to allow Dr. Groce to complete and explain his testimony and in violation of G.S. 1-180 failed to maintain an impartial role.

The original question and the omitted portion of the answer were not placed in the record. Dr. Groce had previously made the same statement without adding the limiting conjunction "but" which appeared at the end of the interrupted statement. Additionally, after the interruption, Dr. Groce gave testimony modifying the interrupted statement and, thus, apparently completed his answer to the State's original question. Under these circumstances there is no prejudicial error, and the assignment of error is overruled.

The defendant also contends that during this voir dire examination relative to the purported confession the trial judge failed to maintain an impartial role in violation of G.S. 1-180 by striking part of the testimony of defendant's witness, Millicent Harrill (his sister-in-law), when there was no objection on the part of the State to the testimony stricken.

It appears that the defendant was trying to secure from this witness her opinion of the defendant being on drugs at the time of the purported confession. She testified that he was on drugs on 20 January 1975 at her home. Thereupon, the court concluded that the question had not been asked properly, struck the answer, and directed counsel to ask her again about it, which was done. She then expressed her opinion that the defendant was under the influence of drugs on the 20th of January, as well as at the Rutherford County jail on 22 January 1975, the date of the alleged crime and confession.

The answers which the defendant wished in the record were placed there. Thus, there was no prejudice to the defendant by the court insisting that the question and answer be repeated before allowing them as evidence during this voir dire examination. The assignment of error is overruled.

Next, the defendant contends that the court erred in allowing into evidence the confession of the defendant.

Both the State and the defendant were permitted to offer evidence on the voir dire hearing as to the admissibility of the confession. Proper findings of fact and conclusions of law were

made. It is well settled that if these facts are supported by competent evidence they are conclusive and binding on appeal. *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1 (1966), cert. denied, 386 U.S. 911, 87 S.Ct. 860, 17 L.Ed. 2d 784 (1967).

The assignment of error is overruled.

[5]   Next, the defendant contends the court erred in not permitting counsel to argue to the jury his tender of a plea of guilty of second-degree murder. This assignment of error is based upon the following argument of the defendant and ruling of the court:

> "Ladies and gentlemen of the jury, as you heard, the defendant tendered a plea of guilty to second degree murder and the State—

> "MR. LOWE: Objection.

> "COURT: Sustained. You may not argue that line. Proceed with your argument."

The record discloses that before the defendant's plea was made, he tendered a plea of guilty to second degree murder, which the State refused to accept, and thereupon he tendered a plea of not guilty. No evidence of the tendered plea of guilty was offered to the jury. In fact, we do not see its relevancy under the circumstances of this case if the plea had been offered into evidence by the defendant. *See* 1 Stansbury's N. C. Evidence §§ 78-81 (Brandis Rev. 1973). "[W]e have held that counsel may not place before the jury incompetent and prejudicial matters, and may not 'travel outside the record' by injecting into his argument facts of his own knowledge or other facts not included in the evidence." *State v. Monk,* 286 N.C. 509, 515, 212 S.E. 2d 125, 131 (1975).

Furthermore, although our research discloses that the issue has not been decided in North Carolina, in the light of the emergence of plea bargaining as a major aspect in the administration of criminal justice and the importance of insuring the integrity of this procedure, *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed. 2d 427 (1971), the trend is that any communication relating to legitimate plea bargaining with the district attorney is generally inadmissible as evidence unless the defendant has subsequently entered a plea of guilty which has not been withdrawn. *Hineman v. State,* 292 N.E. 2d 618 (Ind. Ct. of App. 1973) ; *Moulder v. State,* 289

N.E. 2d 522 (Ind. Ct. of App. 1972) ; 2 ABA Standards, Pleas of Guilty, § 3.4, at 77 [Approved Draft, March 1968] ; *see* 59 A.L.R. 3d 448-460. *See also* 2 Stansbury's N. C. Evidence § 180, at 56 and 58 (Brandis Rev. 1973). *State v. DeBerry,* 92 N.C. 800 (1885), is distinguishable from the present case because there the defendant bargained with the prosecuting witness in an attempt to have the charge dropped.

Under these circumstances the court properly sustained the State's objection to defendant's argument. *See also Clayton v. State,* 502 S.W. 2d 755 (Tex. Cr. App. 1973). "The trial court has a duty, upon objection, to censor remarks not warranted by either the evidence or the law, or remarks calculated to mislead or prejudice the jury." *State v. Monk, supra,* at 516, 212 S.E. 2d 125, 131 (1975). The assignment of error is overruled.

[6]   The defendant argues that the court expressed an opinion in its charge to the jury by erroneously using the terms and phrases "The defendant confesses," "that confession," "confession," "vicious and brutal killing," "vicious and brutal slaying," said terms imparting to the jury the court's opinion of the alleged crime.

"G.S. 1-180 requires that the trial judge clarify and explain the law arising on the evidence. . . ." *State v. Cameron,* 284 N.C. 165, 171, 200 S.E. 2d 186, 191 (1973). "A trial judge should never give instructions to a jury which are not based upon a state of facts presented by some reasonable view of the evidence. When such instructions are prejudicial to the accused he would be entitled to a new trial. [Citations omitted.]." *State v. Lampkins,* 283 N.C. 520, 523-524, 196 S.E. 2d 697, 699 (1973).

In this case the court was talking about a confession that had been admitted into evidence after a voir dire hearing was held, with the court making proper findings of fact and conclusions of law thereon. All the judge told the jury was that if the jury found that the defendant made the confession, then they would have to consider all the circumstances under which it was made in determining whether it was a truthful confession or not.

With regard to the language "vicious and brutal killing," the court charged the jury as follows:

"Now, the court also instructs you, ladies and gentlemen, that in passing upon the question of the presence or absence of an actual specific intent to kill and of premeditation and of deliberation, it is proper for you, the jury, to take into consideration evidence tending to show the absence of provocation on the part of the deceased at the time of the killing, evidence tending to show a VICIOUS AND BRUTAL KILLING on the part of the defendant, evidence tending to show all circumstances relating to and surrounding the killing. . . ." (Emphasis added.)

Then the court went on to charge the jury as follows:

"Now, among the circumstances to be considered in determining whether a killing was with premeditation and deliberation are: (1) Want of provocation on the part of the deceased. (2) The conduct of the defendant before and after the killing. (3) Threats and declarations of the defendant before and during the course of the crime, giving rise to the death of the deceased. (5) The use of grossly excessive force. Premeditation and deliberation, ladies and gentlemen of the jury, may be inferred from a VICIOUS AND BRUTAL SLAYING of a human being." (Emphasis added.)

These instructions were specifically limited in context to the determination by the jury of whether there was premeditation, deliberation, and a specific intent to kill for purposes of the first degree murder charge. Since the jury returned a verdict of guilty of felony-murder, which is not dependent on a determination of premeditation, deliberation, and a specific intent to kill, no prejudice is shown by this charge. This is particularly true since the defendant shot a 68 year old bystander with a .357 magnum pistol while attempting to rob a bank and take from the victim the money he had just been handed by a teller. The State's evidence indicated the victim in no way threatened the defendant. The defendant demanded that the victim "give me that." Then "[t]he robber made a jerk for Mr. Morris' hand and Mr. Morris made a slight jerk—it wasn't a hard jerk, just a slight jerk, and when he did that, he [the defendant] instantly turned that gun to him and shot him before he had time to have a second thought or do anything."

The robber "immediately flipped that gun around" pointing it at a teller and demanded that she turn over all the money. This case is clearly distinguishable from *State v. Buchanan*, 287 N.C. 408, 215 S.E. 2d 80 (1975). There was no prejudicial comment by the trial judge in violation of G.S. 1-180.

The assignment of error is overruled.

Next, the defendant contends that the trial court erred in its charge on second-degree murder in that the judge confused the jury when he referred to "intent" in the charge on second-degree murder.

A review of the instruction discloses that it only seeks to explain to the jury the difference between first-degree murder and second-degree murder. In summary, the court told the jury, "Murder in the first degree, then ladies and gentlemen, is murder in the second degree plus these three essential elements: (1) An actual specific intent to kill, and (2) premeditation and (3) deliberation."

Since the jury returned a verdict of guilty of felony-murder, there has clearly been no error.

There is no merit to this assignment and it is overruled.

Next, the defendant contends that the court erred in expressing an opinion during the course of the trial in violation of G.S. 1-180.

The defendant is attempting to rehash a number of assignments of error, most of which have already been discussed in this opinion. The defendant is not specific and attempts to lump together a number of unrelated incidents. These assignments are broadside in nature and are without merit. *State v. McCaskill*, 270 N.C. 788, 154 S.E. 2d 907 (1967). They are overruled.

Finally, the defendant contends that the trial court erred in sentencing the defendant to death.

Our court has consistently rejected this argument. We do not deem it necessary to set forth again the reasoning of these cases. *State v. Woodson*, 287 N.C. 578, 215 S.E. 2d 607 (1975); *State v. Robbins*, 287 N.C. 483, 214 S.E. 2d 756 (1975); *State v. Vinson*, 287 N.C. 326, 215 S.E. 2d 60 (1975); *State v. Fowler*, 285 N.C. 90, 203 S.E. 2d 803 (1974); *State v. Jar-*

*rette*, 284 N.C. 625, 202 S.E. 2d 721 (1974). The assignment of error is overruled.

We have carefully reviewed the entire record and we find

No error.