STATE OF NORTH CAROLINA v. MACKIE WAYNE FAIRCLOTH

No. 1

(Filed 20 April 1979)

**1. Criminal Law § 15.1— pretrial publicity—change of venue properly denied**

The trial court did not err in denying defendant's motion for change of venue made on the ground that prejudicial publicity prevented his getting a fair trial, since minor bits of information contained in issues of the newspaper appearing over a period of four months that did not properly get to the jury as evidence at trial were not sufficiently prejudicial to entitle defendant to removal to another county for trial.

**2. Kidnapping § 1; Indictment and Warrant § 17.1— purpose of kidnapping—variance between indictment and proof**

Where the indictment charged that defendant kidnapped the victim for the purpose of facilitating flight following commission of the felony of rape but

State v. Faircloth

the evidence tended to show that defendant kidnapped the victim for the purpose of facilitating the commission of the felony of rape, there was a fatal variance between the indictment and the proof, and the trial court erred in denying defendant's motions to dismiss the kidnapping charge.

**3. Rape § 5— first degree rape—use of knife—sufficiency of evidence**

Evidence in a first degree rape prosecution was sufficient to show that the rape of the victim was procured by the use of a deadly weapon where it tended to show that, when defendant approached the victim's car, he brandished a knife and threatened "to cut her guts out"; as they rode in the car and then parked, the knife was on the dash close to defendant's hand; at the time of the rape the knife was stuck in the ground two or three feet from defendant; and the victim submitted to defendant because of the fear that he would cut her with the knife.

**4. Rape § 6— deadly weapon—jury instructions adequate**

Though the Supreme Court has defined a deadly weapon as "any instrument likely to produce death or great bodily harm, under the circumstances of its use," the trial judge did not err in defining a deadly weapon as one "which is likely to cause death or serious body injury."

**5. Robbery § 4.3— robbery with knife—sufficiency of evidence of armed robbery**

The trial court properly submitted to the jury a charge of armed robbery where the evidence tended to show that at the time the victim surrendered her $80 to defendant, defendant had a knife in his possession; though the knife was on the dash of the victim's car, it was within inches of his hand and readily accessible to him; defendant's entrance to the car was gained by brandishing the knife and threatening to cut the victim; and soon after entering the car and placing the knife on the dash, defendant told the victim that all he was after was money.

**6. Criminal Law § 112.3— reasonable doubt—jury instruction proper**

The trial court's brief definition of reasonable doubt as "a sane, rational doubt that arises out of the evidence or the lack of evidence . . ." and "an honest, substantial misgiving generated by some insufficiency of the proof . . ." was sufficient for the jury to understand the meaning of the term.

**7. Criminal Law § 169—failure to show what evidence would have been—no prejudice shown by exclusion**

When objections to evidence are sustained and the record fails to show what the evidence would have been, prejudice is not shown and the exclusion of such evidence cannot be held prejudicial.

**8. Criminal Law § 140— three offenses—cumulative sentences—no error**

In a prosecution for kidnapping, first degree rape and armed robbery, the trial court did not err in failing to provide for all sentences to run concurrently, since the three crimes, though arising from the same incident, were separate offenses.

APPEAL by defendant from *Brown, J.*, 26 June 1978 Session NEW HANOVER Superior Court.

Upon pleas of not guilty, defendant was tried on indictments charging him with (1) felonious larceny of an automobile, (2) kidnapping, (3) armed robbery and (4) first-degree rape. Barbara Elaine Cameron (Barbara) was the alleged victim of the offenses.

Evidence presented by the State is summarized in pertinent part as follows:

On 30 December 1977 Barbara was 18 years of age and lived with her mother and two little brothers. On the evening of said date, she and other relatives, including her mother and a little brother, visited her grandfather who was a patient in New Hanover Memorial Hospital.

Around 9:15 or 9:30 Barbara, her mother and little brother decided to leave the hospital and go home. As they reached the outside entrance to the building, they discovered that it was raining. Since her mother had been sick, Barbara suggested that her mother and brother remain at the hospital door while she went to the parking lot and returned with her car.

While walking from the hospital to her car, a 1967 goldish Barracuda, she passed defendant who was walking toward the hospital; she did not know defendant at that time. When she reached her car, she got in and cranked the motor. At that time defendant opened her car door and Barbara began screaming and tried to kick him away. Defendant then held a knife (described at times as a clam knife and at other times as an oyster knife) to her throat and told her if she did not stop screaming he would cut her guts out. She stopped screaming and at defendant's command she slid over in the seat and he occupied the driver's position.

Defendant proceeded to drive the car out of the parking lot and onto a city street. Barbara's mother heard her scream and when the car left the parking lot instead of coming to the hospital entrance, she notified hospital security guards who in turn notified police. The police then began looking for a 1967 goldish Barracuda.

After driving out of the parking lot, defendant proceeded toward the State Port. Barbara asked him if he was going to kill her and he replied that he would not kill her if she did what he wanted her to. He further stated that all he wanted was money. Barbara told him that she had $94 (she having been paid that

day). Defendant told her that he would not take all of her money, only $80 of it, and she placed that amount on the dash of the car.

After defendant entered the car, he kept his knife in his hand for several minutes but then laid it on the dash "right by his hand where he could grab it". The knife was so situated on the dash when Barbara placed the $80 there.

After driving for some distance on Shipyard Boulevard, defendant turned onto River Road and later drove off from that road onto a dirt road where he stopped the car. He then asked Barbara to take off all of her clothes. The knife was still on the dash and she told him she would feel better if he would put the knife outside the car. He proceeded to open the car door, remove the knife from the dash and stick it in the dirt just outside of the car.

While they were riding and after they stopped, Barbara talked "nice" to defendant, telling him if he would let her go she would not tell anyone about the money. Eventually defendant got "ill" with her stalling and again ordered her to remove her clothing. Out of fear she did so and submitted to his having sexual intercourse with her.

Following the intercourse, Barbara put her clothing back on and defendant talked with her about a date for the next night, which would be New Year's Eve. While they were talking, a police car drove up. Defendant removed his knife from the ground and placed it in the car near him. After conversing with Barbara and defendant, the police arrested defendant and one of them carried Barbara to the hospital. She told police that she had been raped.

Barbara was examined at the hospital emergency room. Acid phosphatase and spermatozoids were found in her vaginal fluid.

Defendant testified as a witness for himself and his testimony is summarized in pertinent part as follows: He is 27 years of age and separated from his wife. On the night in question he saw Barbara, whom he had met before and danced with at a night spot, on the hospital parking lot. He engaged her in conversation and she agreed to go riding with him. They rode down the River Road and onto a dirt road where they parked. After "making out" for awhile, they had intercourse with her full consent.

Although he had an oyster knife with him at the time, he did not threaten Barbara with it. He told her that he needed some money and she voluntarily loaned him $80.00. He did not kidnap, rob or rape her. He had had several previous "scrapes with the law" including four convictions of breaking and entering, one conviction of misdemeanor escape and several convictions of giving worthless checks.

At the close of all the evidence the court allowed defendant's motion to dismiss the larceny of an automobile charge.

The jury found defendant guilty of kidnapping, first-degree rape and armed robbery. On the kidnapping and rape charges, the court entered judgments imposing a life sentence. on each charge. On the armed robbery charge, the court entered judgment imposing a prison sentence of 30 years to begin at expiration of sentence imposed in the first-degree rape case. Defendant appealed.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Leigh Emerson Koman, for the State.*

*Franklin L. Block and Chambers, Stein, Ferguson & Becton, by Adam Stein, for defendant-appellant.*

BRITT, Justice.

For the reasons hereinafter stated, we find no error in defendant's trial and the judgments imposed on the rape and armed robbery charges. However, we conclude that the judgment imposed on the kidnapping charge must be reversed.

I

[1] Defendant's contention that the trial court erred in failing to grant his motion for change of venue is without merit. He argues that he was entitled to a removal of his trial to another county because prejudicial publicity prevented his getting a fair trial in New Hanover County.

G.S. 15A-957 provides: "If, upon motion of the defendant, the court determines that there exists in the county in which the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial, the court must either: (1) Transfer the proceeding to another county in the

judicial district or to another county in an adjoining judicial district, or (2) Order a special venire under the terms of G.S. 15A-958. The procedure for change of venue is in accordance with the provisions of Article 3 of this Chapter, Venue."

It is firmly settled in this jurisdiction that motions for change of venue on the grounds of unfavorable publicity are addressed to the discretion of the trial judge and his ruling thereon will not be disturbed on appeal unless a manifest abuse of discretion is shown. *State v. Boykin,* 291 N.C. 264, 229 S.E. 2d 914 (1976); *State v. Harrill,* 289 N.C. 186, 221 S.E. 2d 325, death sentence vacated, 428 U.S. 904, 96 S.Ct. 3212, 49 L.Ed. 2d 1211 (1976). The burden of showing "so great a prejudice" against the defendant that he cannot obtain a fair and impartial trial is on the defendant. *State v. Boykin, supra.*

In the case at hand, defendant presented excerpts from the 1, 20 and 21 January 1978, 1 February 1978 and 13, 15 and 19 April 1978 issues of the *Wilmington Star-News.* The information set forth in the January issues related to defendant's arrest, the charges against him, police statements as to what the victim had said, and evidence presented at the preliminary hearing. A reading of the January issues discloses that substantially the same information contained therein was submitted to the jury at trial.

The news item appearing in the 1 February 1978 issue was very brief and related to defendant's indictment by the grand jury. The 13 April 1978 item related to the first trial of the case (presided over by Judge Gavin) and for the most part merely set forth the evidence given by the victim and police; this evidence was substantially the same as given by the victim and police at the trial now being reviewed. The 15 April 1978 item related to Judge Gavin's declaring a mistrial due to the fact that one of the jurors had read in the newspaper the preceding day about defendant's prior criminal record; the item also stated that Judge Gavin had also denied defendant's motion to remove the case to another county for trial.

The 19 April 1978 excerpt is an editorial criticizing Judge Gavin for declaring a mistrial because of information published in the newspaper. (In defense of Judge Gavin, it appears that at the time he declared a mistrial defendant had not taken the witness

stand, therefore, His Honor did not know that defendant's criminal record would properly get before the jury.)

The trial now under review took place during the week of 26 June 1978. We cannot believe that the minor bits of information contained in issues of the newspaper appearing in January, February and April of 1978 that did not properly get to the jury as evidence at trial, prejudiced defendant to the extent that he was entitled to have his case removed to another county for trial. We hold that the trial court did not abuse its discretion.

[2]   We find merit in defendant's contention that the trial court erred in denying his motions to dismiss the kidnapping charge.

Our kidnapping statute, G.S. 14-39, provides in pertinent part as follows:

"Kidnapping. — (a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person * * * shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

> (1) Holding such other person for ransom or as a hostage or using such other person as a shield; or
>
> (2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or
>
> (3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person."

The bill of indictment under which defendant was tried and convicted reads as follows:

"THE JURORS FOR THE STATE UPON THEIR OATH PRESENT that on or about the 30th day of December, 1977, in New Hanover County Mackie Wayne Faircloth unlawfully and wilfully did feloniously kidnap Barbara Elaine Cameron without her consent a person who had attained the age of 16 years, but unlawfully removing her from one place to another *for the purpose of facilitating flight* following the commission

of the felony of rape, and that Mackie Wayne Faircloth did fail to release the said Barbara Elaine Cameron in a safe place and did sexually assault the said Barbara Elaine Cameron during such period of confinement and restraint; in violation of G.S. 14-39." (Emphasis ours.)

It has long been the law of this state that a defendant must be convicted, if convicted at all, of the particular offense charged in the warrant or bill of indictment. *State v. Cooper,* 275 N.C. 283, 167 S.E. 2d 266 (1969); *State v. Lawrence,* 264 N.C. 220, 141 S.E. 2d 264 (1965); *State v. Law,* 227 N.C. 103, 40 S.E. 2d 699 (1946); *State v. Jackson,* 218 N.C. 373, 11 S.E. 2d 149, 131 A.L.R. 143 (1940). It is also settled that a fatal variance between the indictment and proof is properly raised by a motion for judgment as of nonsuit or a motion to dismiss, since there is not sufficient evidence to support the charge laid in the indictment. *State v. Cooper, supra; State v. Law, supra; State v. Jackson, supra.*

Defendant argues that there was no evidence presented in the case at hand tending to show that he confined, restrained, or removed Barbara from one place to another for the purpose of "facilitating flight following the commission of the felony of rape"; therefore, there was a fatal variance between the indictment and proof. He further points out that the trial judge in charging the jury on kidnapping stated that one of the five things they must find beyond a reasonable doubt was that he "removed Barbara Cameron for the purpose of facilitating his flight after committing the felony of rape". Defendant's argument is persuasive.

In *State v. Law, supra,* Chief Justice Stacy, speaking for the court, said:

"The question of variance may be raised by demurrer to the evidence or by motion to nonsuit. 'It is based on the assertion, not that there is no *proof* of a crime having been committed, but that there is none which tends to prove that the particular offense charged in the bill has been committed. *In other words, the proof does not fit the allegation, and therefore, leaves the latter without any evidence to sustain it.* It challenges the right of the State to a verdict upon its own showing, and asks that the court, without submitting the case to the jury, decide, as a matter of law, that the State

has failed in its proof' — *Walker, J.*, in *S. v. Gibson*, 169 N.C., 318, 85 S.E., 7 . . . ." 227 N.C. 103, 104. (Emphasis ours.)

In *State v. Lawrence, supra*, the defendant was charged with second offense escape from prison. The indictment alleged that at the time of his escape he was serving a sentence imposed by the Nash County Recorder's Court but the proof showed that he was serving a sentence imposed by the Recorder's Court of Edgecombe County. This court held that there was a fatal variance between the actual facts and the allegations of the bill of indictment.

In *State v. Cooper, supra*, in an opinion by Justice (later Chief Justice) Bobbitt, this court held that where the indictment charged defendant, a prisoner, with willful failure to return to custody "after being removed from the prison on a work-release pass", a violation of G.S. 148-45(b) (now G.S. 148-45(g)(1) ), the trial court erred in denying defendant's motion to dismiss the action where the state's evidence was to the effect that the prison unit superintendent granted defendant weekend leave to visit his home and family, and there was no evidence that defendant had been granted work release privileges or that his pass, if any, was related to the work release plan.

*See also State v. Daye*, 23 N.C. App. 267, 208 S.E. 2d 891 (1974), a case in which the court held that defendant's motion for nonsuit based on fatal variance should have been granted where the indictment charged him with uttering a forged check but the evidence offered at trial tended to show that he uttered a check with a forged endorsement.

Had defendant in the case at hand been tried on an indictment alleging that he restrained or removed Barbara from one place to another for the purpose of facilitating the commission of the felony of rape, the conviction could be upheld. But, the evidence does not support the charge as laid in the indictment. That being true, the judgment in the kidnapping case must be reversed.

## III

There is no merit in defendant's contention that the trial court erred in failing to dismiss the charge of first-degree rape, in instructing the jury regarding the circumstances under which de-

fendant could be convicted of rape procured by the use of a dead-
ly weapon, and in defining "deadly" weapon.

[3] Defendant argues that the evidence fails to show that any
rape of Barbara was procured by the use of a deadly weapon; that
at the time of the alleged rape, the knife was on the outside of
the car, therefore, it was not a threat to her. We reject this argu-
ment.

In *State v. Thompson*, 290 N.C. 431, 444, 226 S.E. 2d 487
(1976), Chief Justice Sharp, speaking for this court, said:

> "The decision in *Dull* [289 N.C. 55, 220 S.E. 2d 344 (1975)]
> is authority for the proposition that a deadly weapon is used
> to procure the subjugation or submission of a rape victim
> within the meaning of G.S. 14-21(a)(2) when (1) it is exhibited
> to her and the defendant verbally, by brandishment or other-
> wise, threatens to use it; (2) the victim knows, or reasonably
> believes, that the weapon remains in the possession of her at-
> tacker or readily accessible to him; and (3) she submits or ter-
> minates her resistance because of her fear that if she does
> not he will kill or injure her with the weapon. In other
> words, the deadly weapon is used, not only when the at-
> tacker overcomes the rape victim's resistance or obtains her
> submission by its actual functional use as a weapon, but also
> by his threatened use of it when the victim knows, or
> reasonably believes, that the weapon is readily accessible to
> her attacker or that he commands its immediate use."

Barbara's testimony clearly tended to show that when de-
fendant approached her car he brandished the knife and threaten-
ed "to cut her guts out"; that as they rode in the car and then
parked, the knife was on the dash close to his hand; that at the
time of the rape the knife was stuck in the ground two or three
feet from defendant; and that Barbara submitted to him because
of the fear that he would cut her with the knife.

We hold that the evidence was sufficient to meet the proof of
first-degree rape as outlined in *Dull* and *Thompson*. Barbara
knew, or had reasonable grounds to believe, that the knife was
readily accessible to defendant. We further hold that the trial
judge properly instructed the jury in conformity with the prin-
ciples set forth in *Dull* and *Thompson*.

**[4]** Defendant complains that the trial judge incorrectly instructed the jury that a deadly weapon "is a weapon which is likely to cause death or serious body injury". He argues that this court has defined a deadly weapon as "any instrument likely to produce death or great bodily harm, under the circumstances of its use", and cites *State v. Cauley*, 244 N.C. 701, 94 S.E. 2d 915 (1956), and *State v. Watkins*, 200 N.C. 692, 158 S.E. 393 (1931).

While we adhere to the definition of deadly weapon given in *Cauley* and *Watkins*, we hold that the trial judge in this case did not err in failing to charge the exact words set forth in those cases. When the words used by the trial judge are considered in context, and along with other instructions given, we think they were sufficient.

## IV

**[5]** We find no merit in defendant's contention that the trial court erred in submitting to the jury the charge of armed robbery and its instructions to the jury on that charge.

Defendant argues that in order to sustain a conviction of armed robbery the evidence must show that the victim was "endangered or threatened by the use or threatened use of a firearm or other dangerous weapon". He further argues that there was no evidence that defendant pointed a weapon at Barbara or threatened her with one at the time she gave him $80.00. We reject this argument.

Our armed robbery statute, G.S. 14-87, provides in pertinent part that "any person or persons who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another . . . shall be guilty of a felony. . . ."

The evidence in this case clearly tended to show that at the time Barbara surrendered her $80 to defendant, he had the knife in his possession; that although the knife was on the dash, it was within inches of his hand and readily accessible to him. His entrance to her car was gained by brandishing the knife and threatening to cut her. Soon after entering the car and placing the knife on the dash, he told her that all he was after was money.

We hold that the evidence was sufficient to support the verdict of armed robbery and the court's jury instructions on that charge were free from error.

V

**[6]** We find no merit in defendant's contention that the trial judge erred in his jury charge when he defined reasonable doubt as follows:

> "A reasonable doubt is not an imaginary or fanciful doubt, but is a sane, rational doubt that arises out of the evidence or the lack of evidence of (sic) some deficiency in it. A reasonable doubt, as that term is employed in the administration of justice, is an honest, substantial misgiving generated by some insufficiency of the proof, an insufficiency that fails to convince your mind and judgment, and to satisfy your reasoning of the defendant's guilt."

The quoted definition is in substantial accord with the definition of reasonable doubt approved by this court in many cases. *See, State v. Watson*, 294 N.C. 159, 240 S.E. 2d 440 (1978); *State v. Wells*, 290 N.C. 485, 226 S.E. 2d 325 (1976); *State v. Vinson*, 287 N.C. 326, 215 S.E. 2d 60 (1975); *State v. Flippin*, 280 N.C. 682, 186 S.E. 2d 917 (1972). As was said by Justice Huskins in *State v. Wells, supra*, ". . . [w]hen the various definitions of reasonable doubt, approved in numerous decisions, are distilled and analyzed, the true meaning of the term is adequately expressed in the brief definition here assigned as error. Brevity makes for clarity and we think the jury fully understood the meaning of reasonable doubt as that term is employed in the administration of the criminal laws. . . ." 290 N.C. 492.

VI

We find no merit in defendant's contention that the trial court committed prejudicial error in limiting his cross-examination of Barbara and her mother.

In cross-examining Barbara, defendant's counsel asked her if her mother objected to her visiting a named night spot, if she had arguments with her mother regarding places where she went, and if, prior to the date in question, she ever discussed with her mother her sexual relations with men. On cross-examination, defendant's counsel asked Barbara's mother, Mrs. Guyton, several questions regarding her knowledge of Barbara's going to several night spots and with whom she went; as to whether Barbara ever discussed her sex life with her mother; and with respect to Mrs. Guyton's marital status at the time of the trial. The court sustain-

ed the state's objections to these questions propounded to Barbara and her mother.

[7] Assuming, *arguendo*, the questions asked were relevant and proper, defendant has failed to show prejudice because the record does not reveal what the answers to the questions would have been. We have held many times that when objections to evidence are sustained and the record fails to show what the evidence would have been, prejudice is not shown and the exclusion of such evidence cannot be held prejudicial. *State v. Banks*, 295 N.C. 399, 245 S.E. 2d 743 (1978); *State v. Little*, 286 N.C. 185, 209 S.E. 2d 749 (1974).

## VII

[8] Finally, defendant contends the trial court committed prejudicial error in failing to provide for all sentences to run concurrently. This contention has no merit.

Defendant argues that when one criminal offense is entirely an element of another offense, separate punishment for the two offenses constitutes double jeopardy and cites *State v. Midyette*, 270 N.C. 229, 154 S.E. 2d 66 (1967). He further argues that in this case the alleged armed robbery was an essential element of the offense of kidnapping, therefore, a separate sentence for armed robbery should not have been imposed.

While we adhere to the principle stated in *Midyette*, it is not applicable to the case at hand. Almost directly in point is *State v. Banks, supra*, where this court upheld separate sentences for kidnapping, armed robbery, assault on a female with intent to commit rape and crime against nature. In that case the court held that the charges of armed robbery, assault with intent to commit rape and crime against nature were the *purposes* for which the victim was confined and restrained and not *elements* of the offense of kidnapping.

In the instant case, clearly the armed robbery was not an element of the offense of rape. Neither was the armed robbery alleged or shown to be an element of the kidnapping offense.

\*    \*    \*

In the kidnapping case, the judgment is reversed.

In the trial of the rape and armed robbery cases, we find no error and the judgments entered in those cases remain in full force and effect.