IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-142

No. 276A21

Filed 16 December 2022

STATE OF NORTH CAROLINA

v.

MICHAEL STEVEN ELDER

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 278 N.C. App. 493, 2021-NCCOA-350, finding no error, in part, and reversing and remanding, in part, judgments entered on 3 April 2019 by Judge Josephine Kerr Davis in Superior Court, Warren County, based upon defendant's convictions for felonious breaking and entering, common law robbery, assault inflicting serious injury, second-degree sexual offense, first-degree rape, and two counts of first-degree kidnapping. Heard in the Supreme Court on 31 August 2022.

*Joshua H. Stein, Attorney General, by Benjamin O. Zellinger, Special Deputy Attorney General, for the State-appellant.*

*Law Offices of Bill Ward & Kirby Smith, P.A., by Kirby H. Smith, III, for defendant-appellee.*

ERVIN, Justice.

¶ 1    The issue before the Court in this case is whether the trial court erred by denying defendant's motion to dismiss the second of two first-degree kidnapping charges which rested upon an allegation that defendant had "unlawfully confin[ed],

restrain[ed,] and remov[ed] [the victim] from one place to another without her consent" for the purpose of facilitating the commission of a first-degree rape even though the record evidence tended to show that one of the alleged kidnappings had occurred after the commission of the rape had concluded. A majority of the Court of Appeals held, in reliance upon *State v. Morris*, 147 N.C. App. 247 (2001), *aff'd per curiam*, 355 N.C. 488 (2002), that the second of defendant's first-degree kidnapping convictions lacked sufficient record support. *State v. Elder*, 278 N.C. App. 493, 2021-NCCOA-350, ¶¶ 35–37. The dissenting judge, on the other hand, concluded that the second of defendant's first-degree kidnapping convictions should be upheld on the basis of *State v. Hall*, 305 N.C. 77 (1982), *overruled on other grounds by State v. Diaz*, 317 N.C. 545 (1986). *Elder*, ¶¶ 90–94 (Tyson, J., concurring, in part, and dissenting, in part). After careful consideration of the parties' arguments in light of the record and the applicable law, we conclude that the Court of Appeals' decision should be affirmed and remand this case to the Court of Appeals for further remand to Superior Court, Warren County, for further proceedings not inconsistent with this opinion.

## I.    Factual Background

**A. Substantive Facts**

On 7 July 2007, A.H.,[1] who was 80 years old and lived alone, was tending to the flower garden in front of her residence when she noticed a light-colored

---

[1] We will refer to the victim by her initials in order to protect her identity.

automobile driving slowly past her house. Upon hearing the car turn and begin moving back in her direction, the victim entered her residence and locked the storm door behind her. After the vehicle parked in the driveway, a man carrying a black satchel approached the victim's house and knocked on the door. Although the victim opened the main door to speak with the man, she left the storm door locked. The man offered to demonstrate a rug cleaning product that he claimed to want to sell to her, but the victim informed the man that she was not interested in his proposal. As a result, the man wrote his contact information on a piece of paper, which he presented to the victim for the purpose of making sure that she would be able to get in touch with him if she changed her mind.

¶ 3        When the victim unlocked and opened the screen door in order to retrieve the paper, the man grabbed the victim's wrist, pushed the door open, and entered the house, at which point he demanded to know where the victim kept her money. After the victim told the man that she did not have any money, the man forced the victim into her bedroom, pushed her onto the bed, and began removing her clothes. Although the victim begged the man not to harm her, he forcibly engaged in vaginal intercourse with her before putting his penis into her mouth and attempting to make her perform oral sex upon him.

¶ 4        After sexually assaulting the victim, the man began rifling through the drawers in the victim's dresser while demanding to know "where [the victim] kept

her good stuff." At the conclusion of his search for items of value, the man took approximately $450 in cash from one of the victim's pocketbooks along with the victim's food stamps, Medicaid card, and driver's license. Although the victim informed the man that her daughter was on the way, the man replied that he would kill the victim if her daughter arrived before his departure.

¶ 5 After tying the victim up and placing her in her bedroom closet, the victim told the man that she could not breathe. At that point, the man moved the victim to the closet in a smaller, adjacent bedroom and tied her to a chair,[2] told the victim that he was going to take a shower, and warned the victim not to leave the room while he was there. Following the man's departure, the victim could hear water running in the bathroom.

¶ 6 After some period of time had passed, the victim was able to untie herself. Although the victim could still hear the sound of running water, she made her way to the front window of the house, from which she could see that the intruder's automobile had departed. At that point, the victim entered the bathroom and

---

[2] The record contained conflicting testimony concerning whether defendant placed the victim in the second bedroom or in a closet within the second bedroom. Although this discrepancy does not seem to us to have any material impact upon the manner in which the case should be resolved, the fact that the verdict sheet upon which the jury recorded its verdict indicates that the jury convicted defendant of first-degree kidnapping based upon his actions in "moving [A.H.] from the bedroom to bedroom to a closet" leads us to conclude that the jury found beyond a reasonable doubt that defendant placed the victim in a closet in the second bedroom.

discovered that it was empty despite the fact that the water was continuing to run in the shower.

¶ 7    Upon attempting to telephone her daughter, Linda Carter, the victim reached Ms. Carter's husband, Harry Carter, whom she told that she had been raped and robbed and from whom she pleaded for assistance. When the Carters arrived at the victim's residence a few minutes later, they discovered that the storm door had been partially torn away from the door jam. According to Mr. Carter, the victim was "a nervous wreck," "very upset," and "hysterical," prompting Ms. Carter to call for emergency assistance.

¶ 8    After emergency medical services personnel and officers from the Warren County Sheriff's Office arrived at the victim's residence, the victim was transported to Maria Parham Hospital in Louisburg. Due to the fact that Maria Parham did not have a rape kit and was not staffed by personnel trained to administer one, the victim was transferred to WakeMed Hospital, where she was seen by Sexual Assault Nurse Examiner Cindy Carter. Nurse Carter performed a rape kit examination and delivered the completed rape kit and other items of evidence that had been collected from the victim to Detective Sergeant Ben Jackson of the Warren County Sheriff's Office, with the evidence in question having later been submitted to the State Crime Laboratory for processing. In addition, Sergeant Jackson interviewed the victim

before she was transferred to WakeMed, at which point she described the assault that had been committed against her.

¶ 9          Special Agent Russell Holley of the Forensic Serology Unit of the State Crime Laboratory examined samples that had been derived from the rape kit and detected the presence of sperm cells in smears that had been collected from the victim and on a cutting that had been taken from the underwear that the victim had been wearing at the time of the assault.  In addition, Forensic Scientist Supervisor Timothy Baize of the State Crime Laboratory detected a DNA mixture on the victim's underwear that was consistent with that of the victim and an unknown male contributor.

¶ 10          At the time of the victim's death on 18 December 2015, the perpetrator of the assault that had been committed against her had not been identified.  On 12 April 2016, Sergeant Jackson contacted the Forensic Investigations Division of the New York City Police Department at the suggestion of the State Crime Laboratory.  After making contact with the New York City Police Department, Sergeant Jackson sought and obtained a bill of indictment from the Warren County grand jury against Stephen Davis charging him with having assaulted the victim, only to learn later that Mr. Davis had been incarcerated on the date of the assault.[3]  After further communications with the New York City Police Department, Sergeant Jackson obtained a search warrant authorizing the seizure of a DNA sample from defendant.

---

[3] The charges against Mr. Davis were later dismissed.

On 18 July 2016, Sergeant Jackson traveled to Winston-Salem, where defendant was living at the time and, along with officers from the Forsyth County Sheriff's Office, executed the search warrant and obtained a DNA sample from defendant. Sergeant Jackson also interviewed defendant, who told Sergeant Jackson that he had not assaulted the victim, that he was not familiar with Warren County, and that he was willing to submit to a polygraph examination in order to prove his innocence.

On 19 July 2016, Sergeant Jackson submitted the DNA sample that had been obtained from defendant to the State Crime Laboratory for comparison with the DNA samples that had been obtained from the rape kit that had been administered to the victim. According to Mr. Baize, "the DNA profile obtained from the sperm fraction of the cutting from the [victim's underwear]" was "consistent with the DNA profile obtained from [defendant]," with the probability that the DNA profile of an unrelated and randomly selected individual would be consistent with the DNA profile that had been obtained from the sperm fraction that had been found on the victim's underwear being "approximately 1 in 10.7 trillion in the Caucasian population, one in 63.0 billion in the African-American population, and one in 312 billion in the Hispanic population."

**B. Procedural History**

On 17 January 2017, the Warren County grand jury returned bills of indictment charging defendant with felonious breaking and entering, common law

robbery, assault with a deadly weapon inflicting serious injury, first-degree sexual offense, first-degree rape, and two counts of first-degree kidnapping. The grand jury alleged with respect to one of the two counts of first-degree kidnapping that defendant had "unlawfully confin[ed], restrain[ed,] and remov[ed] [the victim] from one place to another without her consent" by "moving [the victim] from the kitchen to the back bedroom" and alleged with respect to the second of the two counts of first-degree kidnapping that defendant had "unlawfully confin[ed], restrain[ed,] and remov[ed] [the victim] from one place to another without her consent" by "moving [the victim] from the back bedroom to another bedroom and put[ting] her into a closet." The grand jury alleged that, in both instances, defendant had kidnapped the victim "for the purpose of facilitating the commission of a felony, first[-]degree rape."

¶ 13        The charges against defendant came on for trial before the trial court and a jury at the 27 March 2019 criminal session of Superior Court, Warren County. At the conclusion of the State's evidence and after declining to present evidence in his own defense, defendant unsuccessfully moved that the charges against him be dismissed for insufficiency of the evidence. On 3 April 2019, the jury returned verdicts convicting defendant of felonious breaking and entering, common law robbery, assault inflicting serious injury, second-degree sexual offense, first-degree rape, and two counts of first-degree kidnapping. After accepting the jury's verdicts, the trial court consolidated defendant's convictions for felonious breaking or entering,

second-degree sexual offense, common law robbery, and assault inflicting serious injury for judgment and entered a judgment sentencing defendant to a term of 84 to 110 months imprisonment. In addition, the trial court consolidated defendant's convictions for first-degree rape and two counts of first-degree kidnapping and entered a judgment sentencing defendant to a consecutive term of 240 to 297 months imprisonment. Defendant noted an appeal to the Court of Appeals from the trial court's judgments.

## C. Court of Appeals Decision

¶ 14      In seeking relief from the trial court's judgments and related orders before the Court of Appeals, defendant argued, among other things, that the trial court had erred by denying his motions to dismiss the first-degree rape, first-degree kidnapping, and common law robbery charges for insufficiency of the evidence. In support of his contention that the trial court had erred by failing to dismiss the second of the two first-degree kidnapping charges that had been lodged against him, defendant argued that there was "no evidence [that] the second kidnapping was committed for the purpose of facilitating rape."

¶ 15      In rejecting defendant's challenge to the sufficiency of the evidence to support his convictions for first-degree rape, first-degree kidnapping, and common law robbery, the Court of Appeals unanimously held that the record contained sufficient evidence to support defendant's rape and robbery convictions. *State v. Elder*, 278

N.C. 493, 2021-NCCOA-350, ¶¶ 30, 42, 87. On the other hand, a majority of the Court of Appeals concluded that the trial court had erred by denying defendant's motion to dismiss the second of the two first-degree kidnapping charges, holding that, while "an indictment under [N.C.G.S.] § 14-39(a)(2) need not allege the exact type of felony furthered by the restraint or confinement," the State was required to provide that "the felony that is the alleged purpose of the kidnapping must occur after the kidnapping." *Id.* ¶ 34 (quoting *State v. Jordan* 185 N.C. App. 576, 584 (2007), *disc. rev. denied*, 362 N.C. 241 (2008)). In addition, the majority held that, even though N.C.G.S. § 14-39(a)(2) allows a defendant to be convicted of first-degree kidnapping "where the defendant committed the kidnapping either for the purpose of facilitating the commission of a felony *or* for the purpose of facilitating flight of any person after the commission of a felony, the State is obliged to prove the allegations made in the indictment." *Id.* ¶ 35 (emphasis in original) (citing *State v. Morris*, 147 N.C. App. 247, 251–53 (2001) (reversing a defendant's first-degree kidnapping conviction in a case in which the State had alleged that the defendant had kidnapped the victim for the purpose of facilitating the commission of a rape where the evidence tended to show that the defendant had kidnapped the victim for the purpose of facilitating his flight *after* committing the rape), *aff'd per curiam*, 355 N.C. 488 (2002)). According to the majority, "*Morris* controls the outcome here" given that, in this case, "the State alleged that [d]efendant committed [the second count of first-degree kidnapping]

when he moved [the victim] 'from the back bedroom to another bedroom and put her into a closet[,]' which the parties agree occurred after [d]efendant committed first-degree rape." *Id.* ¶¶ 36–37 (fourth alteration in original). However, the majority continued, "because 'the felony that is the alleged purpose of the kidnapping must occur after the kidnapping,' we must reverse [d]efendant's first-degree kidnapping charge on [the second count.]" *Id.* (first alteration in original) (quoting *Jordan*, 186 N.C. App. at 584). As a result of the fact that both of defendant's first-degree kidnapping convictions had been consolidated for judgment with his first-degree rape conviction, the Court of Appeals remanded that judgment to the trial court for resentencing. *Id.* ¶ 38 (citing *State v. Wortham*, 318 N.C. 669, 674 (1987) (holding that, because "it is probable that a defendant's conviction for two or more offenses influences adversely to him the trial court's judgment on the length of that sentence to be imposed when the offenses are consolidated for judgment," "the better procedure is to remand for resentencing when one or more but not all of the convictions consolidated for judgment has been vacated")).[4]

---

[4] In addition, the majority held that the trial court had erroneously sentenced defendant for both first-degree rape and the remaining charge of first-degree kidnapping. *Elder*, ¶ 74. In reaching this conclusion, the majority determined that, since kidnapping "is elevated from the second degree to the first when 'the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted,'" *id.* ¶ 75 (quoting N.C.G.S. § 14-39(b) (2007)), a defendant "may not be punished for both the first-degree kidnapping and the underlying sexual assault," *id.* (quoting *State v. Daniels*, 189 N.C. App. 705, 709 (2008)). That is the case, the majority explained, because "[N.C.G.S.] § 14-39, [which] defin[es] first-degree kidnapping, reflects the General Assembly's

¶ 16        In a separate opinion concurring with the majority's decision, in part, and dissenting from that decision, in part, Judge Tyson expressed disagreement with his colleagues' conclusion that the trial court had erred by failing to dismiss the second of the two first-degree kidnapping charges. *Id.* ¶ 86 (Tyson, J., concurring, in part, and dissenting, in part). In rejecting defendant's contention that he could not have moved the victim from one bedroom to another "for the purpose of facilitating the commission of" first-degree rape when the rape was already over at that point, Judge Tyson reasoned that "[t]he occurrence of all essential elements of a crime does not mean the commission of a crime ceases." *Id.* ¶ 88–89 (citing *State v. Hall*, 305 N.C. 77, 82–83 (1982) (holding that the fact that "the crime was 'complete' does not mean it was completed"), *overruled on other grounds by State v. Diaz*, 317 N.C. 545 (1986)).

intent that 'a defendant could not be convicted of both first-degree kidnapping and a sexual assault that raised the kidnapping to first degree.' " *Id.* (quoting *State v. Freeland*, 316 N.C. 13, 23 (1986)). Given that the jury had convicted defendant of first-degree kidnapping without specifying whether it found that defendant failed to release the victim in a safe place, that the victim had been seriously injured, or that the victim had been sexually assaulted, the majority concluded that it was "required to assume that the jury relied on defendant's commission of the sexual assault in finding him guilty of first-degree kidnapping." *Id.* ¶ 76 (quoting *Daniels*, 189 N.C. App. at 710). As a result, the Court of Appeals held that, when it resentenced defendant, "the trial court may 1) arrest judgment on the first-degree kidnapping conviction and resentence defendant for second-degree kidnapping, or 2) arrest judgment on the first-degree rape conviction and resentence defendant on the first-degree kidnapping conviction." *Id.* ¶ 77 (quoting *Daniels*, 189 N.C. App. at 710). Finally, a majority of the Court of Appeals issued a writ of certiorari authorizing review of defendant's challenge to the trial court's decision to enter a civil judgment against him in the amount of the attorney's fees that had been awarded to his court-appointed trial counsel and held that the trial court had erred by entering that judgment without affording defendant with adequate notice and an opportunity to be heard and remanded the issue to Superior Court, Watauga County, for further proceedings. *Id.* ¶¶ 83–84.

According to Judge Tyson, defendant's actions in moving the victim to the second bedroom "prevented [the victim] from seeking medical attention, contacting help, or fleeing from [d]efendant"; "continued [the victim's] pain, damage, and trauma from the rape"; and "allowed [d]efendant a chance to shower, instead of needing to immediately flee." *Id.*, ¶ 92. In addition, Judge Tyson contended that "[t]hese additional restraints and asportation 'ma[de] easier' the commission of the rape by allowing [d]efendant a chance to destroy evidence." *Id.* (first alteration in original) (quoting *State v. Kyle*, 333 N.C. 687, 694 (1993)). As a result, Judge Tyson would have held that, when viewed in the light most favorable to the State, "the evidence supports the conclusion that a purpose of the separate kidnapping was to facilitate the rape and the jury could conclude that the kidnapping was part of an ongoing criminal transaction." *Id.* ¶ 93 (citing *State v. Chevallier*, 264 N.C. App. 204, 211 (2019)). The State noted an appeal to this Court based upon Judge Tyson's dissent.[5]

---

[5] Judge Tyson also disagreed with the majority's determinations that defendant had been improperly sentenced for both first-degree kidnapping and first-degree rape and that the trial court had erred by entering a civil judgment against defendant in the amount of the fees awarded to defendant's court-appointed counsel. *Elder*, ¶¶ 100, 105 (Tyson, J., concurring, in part, and dissenting, in part). However, given that the State has not brought either of these issues forward for consideration by this Court in its notice of appeal, they are not before us and will not be discussed further in this opinion. *See* N.C. R. App. P. 14(b)(1) (requiring that, "[i]n an appeal which is based upon the existence of a dissenting opinion in the Court of Appeals, the notice of appeal . . . shall state the issue or issues which are the basis of the dissenting opinion and which are to be presented to the Supreme Court for review").

## II.    Analysis

### A. Standard of Review

In evaluating the correctness of the trial court's decision concerning a motion to dismiss for insufficiency of the evidence, a reviewing court "need determine only whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator," with "substantial evidence" consisting of "that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *State v. Winkler*, 368 N.C. 572, 574 (2015) (quoting *State v. Mann*, 355 N.C. 294, 301 (2002)).  In the course of making this inquiry, the reviewing court must view the evidence "in the light most favorable to the State," with the State being "entitled to every reasonable intendment and every reasonable inference to be drawn therefrom[.]" *Id*. (quoting *State v. Powell*, 299 N.C. 95, 99 (1980)).  As long as the record contains "substantial evidence, whether direct or circumstantial, or a combination, to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *State v. Golder*, 374 N.C. 238, 250 (2020) (cleaned up).  "Whether the State presented substantial evidence of each essential element of the offense is a question of law," so, accordingly, "we review the denial of a motion to dismiss de novo." *State v. Chekanow*, 370 N.C. 488, 492 (2018) (quoting *State v. Crockett*, 368 N.C. 717, 720 (2016)).

**B. Summary of Relevant Caselaw**

¶ 18    The divergent results reached by the members of the panel at the Court of Appeals ultimately rest upon a disagreement about which of our precedents controls the outcome in this case. As a result, we will begin our analysis by reviewing the relevant precedent.

### 1. *State v. Faircloth*

¶ 19    In *State v. Faircloth*, the grand jury charged the defendant with felonious larceny of an automobile, kidnapping, armed robbery, and first-degree rape, having alleged, among other things, that the defendant "did feloniously kidnap [the victim] . . . by unlawfully removing her from one place to another [f]or the purpose of facilitating flight following the commission of the felony of rape." 297 N.C. 100, 104, 107 (1979). The evidence presented at trial, however, tended to show that the defendant had forced his way into the victim's vehicle, drove that vehicle to a secluded location, and *then* raped the victim. *Id.* at 102–03. After the jury convicted him of kidnapping, robbery, and rape,[6] the defendant asserted on appeal that "there was no evidence presented in the case at hand tending to show that he confined, restrained, or removed [the victim] from one place to another for the purpose of '*facilitating flight following* the commission of the felony of rape,'" resulting in a "a fatal variance

---

[6] At the close of evidence, the trial court dismissed the felonious automobile larceny charge. *Faircloth*, 297 N.C. at 104.

between the indictment and proof." *Id*. at 107 (emphasis added). In agreeing that the defendant's contention had merit, this Court observed that, while the defendant's conviction could have been upheld had he "been tried on an indictment alleging that he restrained or removed [the victim] from one place to another for the purpose of facilitating *the commission of* the felony of rape," "the evidence does not support the charge as laid in the indictment." *Id*. at 108 (emphasis added).

### 2. *State v. Hall*

In *Hall*, which this Court decided less than three years after it decided *Faircloth*, the defendant and an accomplice robbed a service station attendant at gunpoint, forced the victim into their car, and drove away in order to prevent the victim from calling for assistance. *Hall*, 305 N.C. at 79–80. After driving approximately five miles, the defendant stopped the car and, as the victim was leaving the vehicle, one of the men shot him in the back. *Id*. at 80. The defendant was subsequently charged with robbery with a dangerous weapon, first-degree kidnapping, and felonious assault, with the kidnapping charge resting upon the "asportation of the victim to facilitate the commission of the felony of armed robbery." *Id*. at 79, 82.

In the course of challenging his kidnapping conviction on appeal, the defendant argued that, "since the evidence show[ed] the crime of armed robbery was complete at the time the victim was taken from the service station to" the point at which he

was let out of the car, "the kidnapping was for the purpose of facilitating flight, not for the purpose of facilitating armed robbery," meaning that there was a fatal variance between the indictment and the evidence presented at trial. *Id.* at 82. In rejecting the defendant's argument, this Court held that "[t]he purposes specified in [N.C.G.S. §] 14-39(a) are not mutually exclusive," so that "[a] single kidnapping may be for the dual purposes of using the victim as a hostage or shield and for facilitating flight, or for the purposes of facilitating the commission of a felony and doing serious bodily harm to the victim." *Id.* Based upon that logic, the Court held that, "[s]o long as the evidence proves the purpose charged in the indictment, the fact that it also shows the kidnapping was effectuated for another purpose enumerated in [N.C.G.S. §] 14-39(a) is immaterial and may be disregarded." *Id.* The Court concluded that the record contained sufficient evidence to show that the defendant had kidnapped the victim "for the purpose of facilitating the armed robbery and also for the purpose of facilitating flight" and, therefore, "the evidence proved the *crime charged* in the indictment." *Id.* (emphasis in original). As a result, we held that, "[a]lthough [the] defendant contends that the crime was 'complete' when [his accomplice] pointed his pistol at [the victim] and attempted to take property by this display of force, the fact that all essential elements of a crime [have] arisen does not mean the crime is no longer being committed," with this Court opining that the fact that the "the crime was 'complete' does not mean it was completed.' " *Id.* (citing *State v. Squire*, 292 N.C.

494 (1977)). Justice Britt, who had authored the Court's opinion in *Faircloth*, dissented from his colleagues' decision in *Hall* on the grounds that he was "unable to reconcile the holding of the majority in this case with our decision in [*Faircloth*]." 305 N.C. at 91 (Britt, J., joined by Branch, C.J., and Exum, J., dissenting, in part).

### 3. *State v. Diaz*

¶ 22    Four years later, we decided *Diaz*, in which the defendant had been charged with trafficking in marijuana on an acting in concert theory. 317 N.C. at 546. At that time, the relevant statute provided that "anyone who s[old], manufacture[d], deliver[ed], transport[ed], *or* possesse[d] more than 50 pounds of marijuana" was guilty of a felony. *Id.* at 547 (emphasis added) (citing N.C.G.S. § 90-95(h)(1) (1985)). At the defendant's trial, the trial court instructed the jury that it could convict defendant if it found that he, acting together with the other defendants, "knowingly possessed *or* knowingly transported marijuana[.]" *Id.* at 553 (emphasis added). On appeal, the defendant argued that the trial court had erred by denying his motion to set aside the jury's guilty verdict because "the verdict was ambiguous and lacked the unanimity required" by N.C.G.S. § 15A-1237 and Article I, Section 24 of the North Carolina Constitution. *Id.*

¶ 23    This Court agreed, holding that "a verdict of guilty following submission in the disjunctive of two or more possible crimes to the jury in a single issue is ambiguous and therefore fatally defective." *Id.* (citing *State v. McLamb*, 313 N.C. 572, 577 (1985);

*State v. Albarty*, 238 N.C. 130, 133 (1953)). According to the Court, the "[s]ale, manufacture, delivery, transportation, and possession of 50 pounds or more of marijuana are separate trafficking offenses for which a defendant may be separately convicted and punished," so that, "[b]y instructing the jury that it could find [the] defendant guilty of trafficking in marijuana if it found that [the] defendant knowingly possessed *or* knowingly transported 10,000 pounds or more of marijuana[,] the trial judge submitted two possible crimes to the jury," with it being impossible to know whether the jury had unanimously found that the defendant knowingly possessed the marijuana, unanimously found that the defendant had knowingly transported the marijuana, or that some jurors had found that the defendant had knowingly possessed the marijuana while other jurors had found that the defendant had knowingly transported it. *Id.* at 554 (emphasis added). As a result, the Court concluded that the trial court's instruction deprived the defendant of his constitutional right not to be convicted of a crime except on the basis of a unanimous jury verdict. *Id.*

¶ 24     The Court cautioned, however, that its decision in *Diaz* "[did] not mean that a simple verdict of guilty based on an indictment and instruction charging crimes in the disjunctive will always be fatally ambiguous." *Id.* Instead, the Court stated that a reviewing court must examine "the verdict, the charge, the initial instructions by the trial judge to the jury[,] . . . and the evidence in a case [that] may remove any

ambiguity created by the charge." *Id.* After acknowledging that *Hall* had "reached results at variance with this opinion," the Court stated that, "[i]nsofar as [*Hall*] and other opinions of this Court contain language inconsistent with the holding of this case they are overruled." *Id.* at 555.[7]

### 4. *State v. Kyle*

In *Kyle*, the defendant, who was armed with a pistol, broke into a mobile home in which his estranged wife and stepson were living. 333 N.C. at 692. After exchanging words with his wife and stepson, the defendant shot his wife in the chest, dragged her outside to her automobile, placed her in the front seat, and ordered his stepson to enter the back seat. *Id.* According to the stepson, the defendant's wife was

---

[7] The parties disagree concerning the extent to which the Court's decision in *Diaz* to overrule *Hall* encompassed the portions of the *Hall* opinion that are relevant to the present case. The State, on the one hand, contends that *Diaz* only overruled *Hall* with respect to the jury unanimity issue that was explicitly addressed in *Hall*, a question that did not include the kidnapping charge, while defendant argues that, in light of *Diaz*, "it would be reversible error to allow [defendant's] conviction on the second count of first-degree kidnapping to stand when the jury may have convicted [defendant] of the second first-degree kidnapping charge for some other purpose than that alleged in the indictment." Our subsequent decisions make clear that the State has the better of this disagreement. *See Kyle*, 333 N.C. at 695 (relying on *Hall* in rejecting the defendant's argument that the kidnapping of the defendant's wife and stepson could not have facilitated the crime of burglary because the burglary was complete upon his entry into the house and noting that *Diaz* had overruled *Hall* "on other grounds"); *State v. Bell*, 351 N.C. 1, 30 (2004) (concluding that, to secure a kidnapping conviction under N.C.G.S. § 14-39(a), "[i]t is not necessary for the State to prove, nor for the jury to find, that a defendant committed a particular act other than that of confining, restraining, or removing the victim" and that, even if the trial court had instructed the jury disjunctively with respect to the various *purposes* which allegedly motivated the defendant's actions, the requirement that the jury's verdict be unanimous was not violated despite the possibility that individual jurors might have relied upon different purposes in determining that the defendant should be convicted) (citing *State v. Hartness*, 326 N.C. 561 (1990)).

still alive at that time and calling the defendant's name. *Id*. After driving some distance, the defendant pulled the automobile to the side of the road, shot his wife in the side of the head to "shut [her] up," and, after driving several more miles, pulled over again and dumped her body in a ditch. *Id*. at 692–93. A grand jury returned bills of indictment charging the defendant with the first-degree murder and first-degree kidnapping of his wife, first-degree kidnapping of his stepson, and first-degree burglary, alleging in the kidnapping indictment that the defendant had "confined, restrained and removed [his wife] 'for the purpose of facilitating the commission of the felonies of murder and burglary, and facilitating the flight of [the defendant] following his participation in the commission of the felonies.' " *Id*. at 691, 693.

¶ 26 On appeal from a judgment based upon defendant's conviction as charged, the defendant argued before this Court that the State had presented insufficient evidence "to establish that he restrained or removed [his wife] for either the purpose of burglarizing her home or for the purpose of murdering her." *Id*. at 694. In upholding defendant's kidnapping conviction, this Court began by noting that "[t]he word facilitate has been defined as 'to make easier.' " *Id*. (quoting *Webster's Ninth New Collegiate Dictionary* 444 (1988)). The Court then reasoned that "[r]estraining [his wife] and [stepson] in [his wife's] apartment . . . made the crime of burglary easier by enabling [the] defendant to carry out his felonious intent" of killing her and that, had the defendant "not restrained the victim and had instead allowed her to flee from his

presence, he may not have completed his intent to kill her." *Id*. at 695. For that reason, the Court, in reliance upon *Hall*, rejected the defendant's argument that "the burglary was complete upon entry into the house and that the kidnapping could not facilitate this crime." *Id*. Similarly, we noted with respect to the first-degree murder charge that, "after shooting [his wife] in her [home], [the] defendant dragged her and [his stepson] to her car while she was still living" and that, after driving several miles, defendant shot her in the head, evidence that "support[ed] a reasonable inference that [the] defendant removed the victim from her apartment for the purpose of facilitating the commission of murder." *Id*. at 696. As a result, the Court affirmed the defendant's first-degree kidnapping conviction. *Id*.

### 5. *State v. Morris*

In *Morris*, the defendant, who was a high school student, invited one of his female classmates to visit him at his apartment, called her upstairs, and "began to rub her shoulders and breasts." 147 N.C. App. at 248. When the victim attempted to leave, the defendant "pushed her away from the door" and "punched her in the face," causing her to black out. *Id*. Upon regaining consciousness, the victim discovered that the defendant was on top of her and that she was not wearing shorts or underwear. *Id*. at 248–49. After she began screaming, hitting, and scratching at the defendant in order to get him to stop what he was doing, the defendant hit the victim in the face, causing her to lose consciousness for a second time. *Id*. at 249. The

victim woke up the next morning in a storage closet outside the apartment, wearing only a tank top and feeling sore all over her body. *Id.* After a grand jury charged the defendant with second-degree rape and second-degree kidnapping, the jury convicted him of both offenses. *Id.* at 248.

On appeal, a majority of the Court of Appeals held that there was a fatal variance between the allegations of the indictment and the evidence, stating that

> [t]he indictment for second degree kidnapping stated [that the] defendant kidnapped the victim "for the purpose of facilitating the commission of a felony." The indictment made no mention of facilitating defendant's flight following the commission of a felony. At trial, the State again asserted only that the kidnapping facilitated the felony of second degree rape.
>
> . . . .
>
> In the case before us, the evidence presented shows the victim was confined in the apartment living room, she was knocked unconscious, she awoke once to find [the] defendant on top of her and her clothes removed, she was knocked unconscious again, and when she awoke a second time, she was locked in the storage closet outside. The evidence presented could possibly show [the] defendant kidnapped the victim for the purpose of facilitating the flight from the commission of a felony; however, this crime was not charged. There is no evidence [that the] defendant removed the victim to the storage closet for the purpose of raping her there. All of the physical evidence of a rape was found inside the apartment. While there was testimony that the victim kicked her way out of the storage closet, there was no evidence of a struggle or a rape inside the storage closet.

*Id.* at 250–51. In addition, the majority at the Court of Appeals rejected the State's invocation of the continuous transaction doctrine on the grounds that "our Courts have not applied the continuous transaction doctrine to instances involving rape and kidnapping like the situation we have before us" and that, "[w]hile these two acts occurred close in time, they were not inseparable or concurrent actions," with "[a]ll of the elements of the rape [having been] completed before defendant removed the victim to the storage closet." *Id.* at 252.

Finally, the Court of Appeals disagreed with the State's argument that *Kyle* was controlling, reasoning that, "[w]hile there is little question that [the] defendant's actions made his flight from the scene easier and was an attempt to cover up his act, the removal of the victim to the storage closet in no way made defendant's rape of her easier, as all the elements of rape were completed before the removal." *Id.* at 252–53. As a result, the Court of Appeals reversed the defendant's second-degree kidnapping conviction over a dissent. Although Judge Walker dissented on the grounds that he was "unable to reconcile the facts of this case" with those in *Hall, id.* at 253 (Walker, J., dissenting), this Court affirmed the Court of Appeals decision by means of a per curiam opinion, *State v. Morris*, 355 N.C. 488 (2002).

## C. Second-Degree Kidnapping

In the present appeal, the State asserts that, by relying upon *Morris* and *Jordan*, the Court of Appeals' decision in this case conflicts with this Court's decision

in *Hall*. According to the State, "it is not clear that the sexual assaults on [the victim] had ended" at the time that defendant had moved her to the second bedroom and that, "even if they were, *Hall* argues that the crime still is not necessarily over." Arguing consistently with the reasoning that Judge Tyson adopted in his dissent, the State contends that "[d]efendant's actions after the second kidnapping 'continued [the victim's] pain, damage, and trauma from the rape' " and that defendant's actions in restraining the victim "allowed [d]efendant a chance to potentially destroy evidence by showering [and] escaping, and prolonged the victim's pain, injuries, and trauma," quoting *Elder*, ¶ 92 (Tyson, J. concurring, in part, and dissenting, in part). In addition, the State contends that, "[i]f the second kidnapping . . . in any way 'made easier' the commission of the rape, as the jury found, then [d]efendant facilitated the commission of the rape," citing *Kyle*, 333 N.C. at 693. As a result, the State asserts that, when the evidence is viewed in the light most favorable to the State, it "support[s] a reasonable inference that [defendant] moved [the victim] into the closet to facilitate the commission of her rape."

¶ 31     In the State's view, both *Jordan* and *Morris* are distinguishable from this case in ways that the Court of Appeals failed to appreciate. As an initial matter, the State argues that the defendant in *Jordan* had been charged with burglary, which is "complete once the defendant enters a house," whereas "the end of the commission of [a rape] is far more amorphous and difficult to define." The State also contends that,

even if this Court finds that distinction to be unpersuasive, *Jordan* was incorrectly decided in light of *Hall* and *Kyle*. In support of this assertion, the State points to the fact that "the trial court instructed the jury that the confinement, restraint, or removal of the victim had to be for 'the purpose of facilitating [defendant's] commission of committing first-degree rape,'" with the fact that the jury found that this element of the relevant crime existed beyond a reasonable doubt providing further indication that, "in [the] light most favorable to the State, the trial court's decision to deny [d]efendant's motion to dismiss this [count of first-degree kidnapping] was correct." According to the State, "the second kidnapping helped facilitate the commission of rape because it prevented the victim from fleeing or getting help" and that the existence of "other grounds or theories the State could have used in indicting and convicting [defendant] is irrelevant" because "the second kidnapping could satisfy a theory in which the crime was done to facilitate a felony, and in which the crime was done to facilitate flight."

¶ 32        Furthermore, the State argues that the majority at the Court of Appeals erred by relying upon *Morris* even though the Court of Appeals' decision in that case had been affirmed per curiam by this Court, insisting that "the Court of Appeals myopically found [that] 'there is no evidence defendant removed the victim for the purpose of raping her there,'" quoting *Morris*, 147 N.C. App. at 251. In the State's view, this conclusion was "short-sighted" because the "jurors could, as they did in

*Morris* and in this matter, find that the facts supported that a second kidnapping facilitated the commission of a rape" by allowing the defendant to "destroy evidence by showering, prolong the victim's pain and suffering, and evade capture by committing the second kidnapping."

¶ 33        In seeking to persuade us that the Court of Appeals' decision to overturn the second of defendant's first-degree kidnapping convictions on fatal variance grounds should be upheld, defendant begins by noting that "[a] valid kidnapping indictment must allege [that] the defendant unlawfully confined, restrained, or removed a person, for one of the [ten] specific purposes set out in N.C.G.S. § 14-39" and that "the State is restricted at trial to proving the purpose(s) alleged in the indictment." According to defendant, "the State had the burden of proving not only that [he] kidnapped [the victim] by moving her from her back bedroom to the front bedroom closet, but [also] that [he] did so with the specific intent to facilitate his commission of a felony, to wit: first degree rape; as alleged in the State's indictment." In light of the State's failure to make the required evidentiary showing, defendant contends that the majority at the Court of Appeals properly concluded that *Morris* dictated a decision in his favor in this case.

¶ 34        We hold that the evidence adduced at trial does not support the second of the two counts of first-degree kidnapping alleged in the indictment and that the majority

did not err in reaching this conclusion. According to the relevant statutory provision,

a defendant is guilty of kidnapping if he or she

> unlawfully confine[s], restrain[s], or remove[s] from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person . . . if such confinement, restraint or removal is for the purpose of:
>
> (1) Holding such other person for a ransom or as a hostage or using such other person as a shield; or
>
> (2) *Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony*; or
>
> (3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person; or
>
> (4) Holding such other person in involuntary servitude in violation of [N.C.G.S. §] 14-43.12.
>
> (5) Trafficking another person with the intent that the other person be held in involuntary servitude or sexual servitude in violation of [N.C.G.S. §] 14-43.11.
>
> (6) Subjecting or maintaining such other person for sexual servitude in violation of [N.C.G.S. §] 14-43.13.

N.C.G.S. § 14-39(a) (2021) (emphasis added). A kidnapping is elevated from second-

degree kidnapping to first-degree kidnapping in the event that "the person kidnapped

either was not released by the defendant in a safe place or had been seriously injured

or sexually assaulted." N.C.G.S. § 14-39(b).

¶ 35 According to well-established North Carolina law, since "kidnapping is a specific intent crime, the State must prove that the defendant unlawfully confined, restrained, or removed the person for one of the [ten] purposes set out in the statute." *State v. Moore*, 315 N.C. 738, 743 (1986);[8] *accord State v. China*, 370 N.C. 627, 633 (2018); *State v. Prevatte*, 356 N.C. 178, 252 (2002). As a result, an indictment charging a defendant with kidnapping "must allege the purpose or purposes [for the kidnapping] upon which the State intends to rely, and the State is restricted at trial to proving the purposes alleged in the indictment." *Moore*, 315 N.C. at 743; *see also Faircloth*, 297 N.C. at 107 (observing that it "has long been the law of this state that a defendant must be convicted, if convicted at all, of the particular offense charged in the warrant or bill of indictment"). Although the indictment "may allege more than one purpose for the kidnapping, the State has to prove only one of the alleged purposes in order to sustain a kidnapping conviction. *Moore*, 315 N.C. at 743.

¶ 36 The indictment returned against defendant in this case for the purpose of charging him with kidnapping alleged that he

> kidnap[ped] [the victim], a person who had attained and [sic] the age of 16 years, by unlawfully confining, restraining[,] and removing her from one place to another without her consent and *for the purpose of facilitating the*

---

[8] The General Assembly amended N.C.G.S. § 14-39 in 2006 to add human trafficking and sexual servitude to the list of purposes for which a person could "unlawfully confine, restrain, or remove" another person so as to be guilty of kidnapping. *See* Act to Protect North Carolina's Children/Sex Offender Law Changes, S.L. 2006-247, § 20(c), 2006 N.C. Sess. Laws 1065, 1084.

> *commission of a felony, first degree rape,* by moving [the
> victim] from the back bedroom to another bedroom and
> put[ting] her into a closet. [The victim] was not released
> by the defendant and she was forcibly confined to a closet
> until she freed herself sometime after the defendant left.

(emphasis added.) As a result of the manner in which the kidnapping indictment was

written, the State was obligated to prove beyond a reasonable doubt that defendant

had moved the victim to the closet in the second bedroom *for the purpose of facilitating

the commission of rape. See Moore*, 315 N.C. at 743; *see also Morris*, 147 N.C. App. at

253. A careful review of the record reveals, however, that all of the evidence

presented at trial, even when taken in the light most favorable to the State, tended

to show that defendant did not move the victim "from the back bedroom to another

bedroom and put her into a closet" until *after* he had raped her, with nothing that

defendant did during that process having made it any easier to have committed the

actual rape.[9] As a result, the record does not support the allegation that defendant

moved the victim to the closet in the second bedroom *for the purpose of* facilitating

the commission of rape. *See Jordan*, 186 N.C. App. at 584 (holding that, where an

indictment alleges that the defendant kidnapped a victim for the purpose of

facilitating the commission of a felony, "the felony that is the alleged purpose of the

---

[9] N.C.G.S. § 14-27.21(a) provides, in pertinent part, that a defendant "is guilty of first-degree forcible rape if the person engages in vaginal intercourse with another person by force and against the will of the other person" and "[i]nflicts serious personal injury upon the victim or another person."

kidnapping must occur after the kidnapping"); *see also State v. Brooks*, 138 N.C. App. 185, 192 (2000) (holding that, in order for the State to prove that the defendant kidnapped the victim for the purpose of facilitating the commission of assault with a deadly weapon inflicting serious injury, "the evidence at trial must have shown that [the] defendant kidnapped [the victim] *before* he shot her").

¶ 37 The evidence elicited at trial would, of course, support a jury finding that defendant moved the victim to the closet in the second bedroom for the purpose of *facilitating his flight* following the commission of the rape. For example, the evidence tending to show that defendant locked the victim in the bedroom closet and took a shower could support a jury finding that the defendant facilitated his escape from raping the victim by destroying any biological evidence of the crime that might have been present on his body and leaving the scene before the victim had had an opportunity to call for help. *See Morris*, 147 N.C. App. at 252–53 (noting that "there is little question" that the defendant's actions in moving the victim from the bedroom in which he had raped her to a storage closet outside the apartment "made his flight from the scene easier and was an attempt to cover up his act"). However, the grand jury simply did not allege that defendant moved the victim from one bedroom to another for the purpose of facilitating his flight following the commission of a felony. *Cf. Faircloth*, 297 N.C. at 108 (holding that, had the indictment alleged that the defendant had "restrained or removed the victim from one place to another for the

purpose of facilitating the commission of the felony of rape, the conviction could be upheld," and that, because the evidence contained in the record tended to show that the kidnapping took place *before* the rape, the record did not support the allegation contained in the indictment that the defendant had kidnapped the victim for the purpose of facilitating his *flight from* the commission of a felony).

¶ 38 The facts at issue in this case are virtually indistinguishable from those at issue in *Morris*. In this case, defendant moved the victim to the closet in the second bedroom after having raped her, just as the defendant in *Morris* moved his victim into a storage closet outside the apartment after he had raped her, with "[t]here [being] no evidence defendant removed [the victim] to the [closet in the second bedroom] for the purpose of raping her there." *Morris*, 147 N.C. App. at 251. Similarly, as in *Morris*, the indictment "[makes] no mention of facilitating defendant's flight following the commission of a felony." *Id*. at 250. In addition, the Court of Appeals in *Morris* rejected an argument that had been advanced by the State in that case, in reliance upon *Kyle*, that is very similar to an argument that the State has advanced in this case.

> The State also relies on *State v. Kyle* in arguing that "to facilitate" means "to make easier." Therefore, any act which makes the commission of the felony easier will support a conviction of facilitating the felony. In *Kyle,* the kidnapping made the eventual murder easier because it prevented the victim from escaping. While we agree with this theory of the State's argument and its definition of "to facilitate," the facts in the case before us do not support this

> theory. While there is little question defendant's actions
> made his flight from the scene easier and was an attempt
> to cover up his act, the removal of the victim to the storage
> closet in no way made defendant's rape of her easier, as all
> the elements of rape were completed before the removal.
> Again, defendant's actions possibly would support a
> conviction of second degree kidnapping for the purpose of
> facilitating his flight from the commission of a rape;
> however, the State has failed to carry its burden in proving
> defendant's actions facilitated defendant's commission of
> the actual rape.

*Id.* at 252–53 (citation omitted). In the same vein, by placing the victim in the closet

in the second bedroom and apparently taking a shower, defendant may have

facilitated his escape from or covered up evidence of the commission of the rape.

However, we are unable to see how any of these actions made it any easier for

defendant to rape the victim.

¶ 39        Apart from contending that the Court of Appeals took a "short-sighted" view

in *Morris*, the State has made no attempt to persuade us that it is not controlling in

this case, despite the fact that this Court has long held that "[p]er curiam decisions

stand upon the same footing as those in which fuller citations of authorities are made

and more extended opinions are written." *Bigham v. Foor*, 201 N.C. 548, 549 (1931);

*accord Tinajero v. Balfour Beatty Infrastructure, Inc.*, 233 N.C. App. 748, 761 (2014);

*Total Renal Care of N.C. v. N.C. Dep't of Health & Hum. Servs.*, 195 N.C. App. 378,

386 (2009); *see also Mote v. White Lake Lumber Co.*, 192 N.C. 460, 465 (1926)

(observing that a per curiam opinion "carries all the force of a formal utterance").[10]

In addition, Judge Tyson totally failed to make any mention of *Morris* in his

dissenting opinion. *See Elder*, ¶¶ 88–94 (Tyson, J., concurring, in part, and

dissenting, in part). Instead, both the State and Judge Tyson simply contend that

the outcome in this case is controlled by *Hall*. We do not find this argument to be

persuasive.

¶ 40 As an initial matter, N.C.G.S. § 14-39(a) delineates ten specific purposes for

which a defendant might "unlawfully confine, restrain, or remove" a victim in order

to be guilty of kidnapping, with the indictment being required to allege that the

defendant acted to effectuate one of these purposes and with the State being required

to elicit substantial evidence to that effect in order to obtain the defendant's

conviction for kidnapping. *See Moore*, 315 N.C. at 743 (noting that "[t]he indictment

in a kidnapping case must allege the purpose or purposes upon which the State

intends to rely, and the State is restricted at trial to proving the purposes alleged in

the indictment"). As we have already noted, the indictment returned against

---

[10] The dissenting judge in *Morris* argued, as Judge Tyson has done in this case, that the majority's decision was inconsistent with *Hall*. *Morris*, 147 N.C. App. at 253–54 (2001) (Walker, J., dissenting). For that reason, the issue before this Court in *Morris* was identical to the one that is before us now. *See State v. Alexander*, 380 N.C. 572, 2022-NCSC-26, ¶ 26 (noting that, "when an appeal is taken pursuant to N.C.G.S. § 7A-30(2), the only issues properly before the Court are those on which the dissenting judge in the Court of Appeals based his dissent" (cleaned up)); N.C. R. App. P. 14(b)(1). Our decision to affirm the Court of Appeals' decision in *Morris* per curiam means that we effectively rejected the State's contention that a fact pattern like the one at issue here was controlled by *Hall*. In other words, one can have either *Hall* or *Morris*, but not both.

defendant in this case alleged that defendant kidnapped the victim by "unlawfully confining, restraining[,] and removing her from one place to another without her consent and *for the purpose of facilitating the commission of a felony, first degree rape*," which means that the State was required to prove that defendant moved the victim to the bedroom closet for the purpose of facilitating the commission of a rape. (emphasis added.) For the reasons that we have already provided, the record simply does not support a determination that the movement of the victim from one bedroom to the other did anything to make any easier the commission of the rape, which had already occurred prior to the point in time at which the victim was moved to the closet in the second bedroom. Aside from the fact that an identical argument was rejected in *Morris*, the State has not cited any authority in support of its contention that, unlike a burglary, which is "complete once the defendant enters a house," "the end of the commission of [rape] is far more amorphous and difficult to define."[11] On the contrary, we have clearly held that, "generally rape is not a continuous offense, but each act of intercourse constitutes a distinct and separate offense." *State v. Dudley*, 319 N.C. 656, 659 (1987) (cleaned up); *accord State v. Carter*, 198 N.C. App. 297, 305 (2009); *State v. Sapp*, 190 N.C. App. 698, 704 (2008).

---

[11] The State apparently overlooks the fact that this Court in *Kyle* specifically rejected the defendant's argument that "the burglary was complete upon entry into the house and that the kidnapping could not facilitate this crime." 333 N.C. at 695.

¶ 41        In addition, the State's argument in reliance upon *Hall* simply cannot be squared with the sequence of events that transpired in this case. Although defendant's decision to move the victim to the closet in the second bedroom might have facilitated his ability to escape following the commission of the rape, we are completely unable to see how those actions facilitated the commission of the rape itself, which had already happened by that point. For the same reason, we have difficulty seeing how the defendant's decision to kidnap the victim in *Hall* after having already robbed him served to facilitate the commission of the robbery rather than facilitating the defendant's flight following the robbery, particularly given our observation that the defendant kidnapped the victim "so [the victim] couldn't get to a telephone for a while," *Hall*, 305 N.C. at 80. Indeed, the Court in *Hall* did not provide any explanation for how the asportation of the victim helped make the commission of the robbery any easier other than making the conclusory assertion that "[the defendant] kidnapped [the victim] for the purpose of facilitating the armed robbery and also for the purpose of facilitating flight" and the otherwise unsupported contention that "the fact that all essential elements of a crime have arisen does not mean that the crime is no longer being committed" and that the fact that "the crime was 'complete' does not mean it was completed." 305 N.C. at 82–83.

¶ 42        The only authority that this Court cited in support of the last of these propositions was *State v. Squire*, a case in which three defendants were charged with

having murdered a state trooper while fleeing from the commission of an armed robbery. 292 N.C. at 500–01. This Court upheld the defendants' convictions for first-degree murder on the basis of the felony murder rule despite the defendants' argument that the robbery had been completed before one of them fatally shot the trooper on the grounds that, "[f]or the purposes of this rule, the underlying felony is not deemed terminated prior to the killing merely because the participants have then proceeded far enough with their activities to permit their conviction of the underlying felony." *Id*. at 511. This holding from *Squire* would come to be known as the "continuous transaction doctrine," pursuant to which "[a] killing is committed in the perpetration or attempted perpetration of another felony when there is no break in the chain of events between the felony and the act causing death, so that the felony and homicide are part of the same series of events, forming one continuous transaction." *State v. Wooten*, 295 N.C. 378, 385–86 (1978). We have applied the continuous transaction doctrine in cases in which the defendant has committed murder and, within the same time frame, also committed another crime such as arson, *see State v. Campbell*, 332 N.C. 116, 120 (1992); armed robbery, *see State v. Olson*, 330 N.C. 557, 566 (1992); sexual offense, *see State v. Thomas*, 329 N.C. 423, 434 (1991); rape, *see State v. Trull*, 349 N.C. 428, 449 (1998); and kidnapping, *see State v. Mann*, 355 N.C. 294, 305 (2002). In addition, this Court has held that evidence is sufficient to convert what would otherwise be a second-degree sexual

offense into a first-degree sexual offense in the event that it shows "a series of incidents forming a continuous transaction between [the] defendant's wielding [of a dangerous or deadly weapon] and the sexual assault" even if the defendant was not holding the weapon at the exact moment that the sexual act was committed, *State v. Whittington*, 318 N.C. 114, 119–20 (1986), and that a conviction for robbery with a dangerous weapon can be upheld when "the defendant's use or threatened use of a dangerous weapon . . . precede[s] or [is] concomitant with the taking, or [is] so joined with it in a continuous transaction by time and circumstance as to be inseparable," *State v. Hope*, 317 N.C. 302, 306 (1986).

¶ 43    On the other hand, as the Court of Appeals recognized in *Morris*, we have not applied the continuous transaction doctrine to circumstances like those presented in that case and the one that is presently before us, *see Morris*, 147 N.C. App. at 252, and are not persuaded that we should do so in circumstances involving similar facts. Although defendant's actions in raping the victim and moving her to the closet in the second bedroom "occurred close in time, they were not inseparable or concurrent actions" given that "[a]ll of the elements of the rape were completed before defendant removed the victim to the [second bedroom] closet." *Id.*; *see also Dudley*, 319 N.C. at 659. In addition, unlike the vast majority of the cases in which the continuous transaction doctrine has been applied, this case does not involve the commission of a homicide. *See Wooten*, 295 N.C. at 385–86. Thus, we hold that the continuous

transaction doctrine does not justify a decision to uphold the second of defendant's first-degree kidnapping convictions in this case.

¶ 44      In light of this logic, we conclude that the Court's statement in *Hall* that the fact that "the crime was 'complete' does not mean it was completed" sweeps too broadly, particularly given that the only support provided for that proposition stems from the application of the felony murder rule. *See Squire*, 292 N.C. at 511 (holding that, "[f]*or the purposes of this rule*, the underlying felony is not deemed terminated prior to the killing merely because the participants have then proceeded far enough with their activities to permit their conviction of the underlying felony" (emphasis added)).  In addition, we are concerned that the Court in *Hall* failed to articulate any kind of limiting principle that can be used to identify the point at which the commission of a crime has been "completed."[12]  If the point at which a crime has been committed is not, as the Court in *Hall* seemed to suggest it was not, the point at which all of the essential elements of the crime could be found beyond a reasonable doubt, there does not appear to be any meaningful limitation upon the extent to which acts committed by the defendant following the technical completion of a crime would

---

[12] As a matter of basic grammar, we cannot discern any difference between a "complete" crime and a crime that has been "completed" in light of the fact that "complete" and "completed" are simply two different forms of the same word. *See New Oxford American Dictionary* 355 (3d ed. 2010) (defining "complete" as an adjective meaning "having run its full course; finished:  *the restoration of the chapel is complete*," and defining "completed" as a transitive verb meaning "finished making or doing: *he completed his Ph.D. in 1983*"); *Merriam-Webster's Collegiate Dictionary* 254 (11th ed. 2007) (defining both "complete" and "completed" as transitive verbs meaning "to bring to an end" or "to mark the end of").

suffice to support a finding of facilitation of the commission of a rape for purposes of the kidnapping statute. *See State v. Dew*, 379 N.C. 64, 2021-NCSC-124, ¶ 29 (observing that, although "the concept of an assault can be broader than each individual harmful contact, . . . allowing for a separate charge for each non-simultaneous contact would erase any limiting principle and allow the State to charge a defendant for every punch in a fight"). For that reason, we are not persuaded that the statement from *Hall* upon which the State relies in this case provides adequate support for the trial court's decision to allow defendant to be convicted of kidnapping on the grounds that his conduct facilitated the commission of the rape of the victim.

¶ 45     Finally, we conclude that the State's position, and the holding in *Hall* upon which it rests, cannot be squared with the manner in which the kidnapping statute is written. According to the relevant statutory language, a defendant is guilty of kidnapping if he or she unlawfully confines, restrains, or removes the victim from one place to another "for the purpose of . . . [f]acilitating the commission of any felony *or* facilitating flight of any person following the commission of a felony." N.C.G.S. § 14-39(a)(2) (emphasis added). The use of the disjunctive "or" in N.C.G.S. § 14-39(a)(2) plainly indicates that the defendant is subject to the criminal sanction based upon the commission of a kidnapping if his or her acts occurred for the purpose of *either* facilitating the commission of a felony *or* facilitating his or her escape following the commission of a felony. *See Davis v. N.C. Granite Corp.*, 259 N.C. 672, 765 (1963)

(holding that, "where a statute contains two clauses which prescribe its applicability, and the clauses are connected by a disjunctive (e.g., 'or'), the application of the statute is not limited to cases falling within both clauses, but will apply to cases falling within either of them" (cleaned up)). An argument that defendant's actions in moving the victim to the closet in the second bedroom after having raped her "made the commission of the rape easier" because it "helped [d]efendant get away with the rape" and "made it easier for [him] to shower and destroy evidence" effectively conflates actions that made it more likely that defendant would avoid apprehension for the rape with the actions necessary to commit the rape itself. In other words, the argument upon which the State relies would, if adopted, effectively eliminate the distinction between the commission of a kidnapping for the purpose of "facilitating the commission of any felony" and the commission of a kidnapping for the purpose of "facilitating flight of any person following the commission of a felony," a result that cannot be squared with the unambiguous statutory language making facilitation of the commission of a crime and flight from a crime two different bases for finding that the defendant has committed a kidnapping. *See State v. Morgan*, 372 N.C. 609, 614 (2019) (recognizing that "a statute may not be interpreted in a manner which would render any of its words superfluous" (cleaned up)).[13]

---

[13] Similarly, we are not persuaded by the State's argument that moving the victim to the closet in the second bedroom facilitated the commission of the rape because it "prolong[ed]

¶ 46        As a result, we hold that the portions of our prior decision in *Hall* upon which the State and the dissenting opinion at the Court of Appeals relied are fundamentally inconsistent with *Faircloth* and *Morris* and, therefore, must be overruled. *See Janus v. Am. Fed'n of State, Cnty., and Mun. Emps., Council 31*, 138 S. Ct. 2448, 2478–79 (2018) (listing factors that should be considered in the course of deciding whether a prior decision should be overruled, including "the quality of [the prior decision's] reasoning, the workability of the rule it established, its consistency with other related decisions, developments since the decision was handed down, and reliance on the decision"). For that reason, we hold that, in instances in which the grand jury has alleged that a defendant unlawfully confined, restrained, or removed a victim from one place to another without his or her consent for the purpose of facilitating the commission of a felony, "the felony that is the alleged purpose of the kidnapping must occur after the kidnapping." *Jordan*, 186 N.C. App. at 584; *see also Faircloth*, 297

---

[her] pain and suffering" and "continued the trauma of the rape." The infliction of physical or emotional pain, while inherent in the commission of the offense, is not an element of rape, nor is a victim's immediate trauma after the rape even sufficient to elevate a particular rape from a second-degree to a first-degree offense. *See State v. Boone*, 307 N.C. 198, 205 (1982) (holding that, in order for mental injury to constitute the "serious personal injury" sufficient to support a conviction for first-degree rape, "ordinarily the mental injury inflicted must be more than the *res gestae* results present in every forcible rape and sexual offense," so that the State must "offer proof that such injury was not only caused by the defendant but that the injury extended for some appreciable time beyond the incidents surrounding the crime itself"), *overruled on other grounds by State v. Richmond*, 347 N.C. 412, 430 (1998).

N.C. at 108; *Morris*, 147 N.C. App. at 253; *Brooks*, 138 N.C. App. at 192.[14] In addition, we hold that, in this case, all of the evidence presented at trial, when considered in the light most favorable to the State, tends to show that the felony that defendant allegedly attempted to facilitate by kidnapping the victim occurred *before* defendant moved the victim to the closet in the second bedroom. As a result, there is a fatal variance between the allegation in the indictment that defendant moved the victim to the closet "for the purpose of facilitating the commission of a felony, first degree rape," and the evidence elicited at trial that tended to show that the rape of the victim had been completed prior to the point in time at which the relevant kidnapping allegedly occurred, so that the trial court erred by failing to grant defendant's motion to dismiss the second count of first-degree kidnapping for insufficiency of the evidence. *See State v. Gibson*, 169 N.C. 318, 322 (1915) (holding that a dismissal based upon the existence of a fatal variance between the indictment and the evidence "is based on the assertion, not that there is no *proof* of a crime having been committed, but that there is none which tends to prove the particular offense charged in the bill

---

[14] Other than *Kyle*, in which, unlike in *Hall*, the Court attempted to explain how defendant's restraint of the victims facilitated the commission of burglary, the only other case that appears to have followed *Hall* is *State v. Holloway*, an unpublished decision in which the Court of Appeals rejected the defendant's assertion that the State had failed to prove that he had kidnapped the victim "to facilitate the attempted armed robbery" given that the evidence tended to show that the robbery was complete before the defendant placed the victim in his car. No. COA 16-940. 658, 2017 WL 2118712, at *5 (N.C. Ct. App. May 16, 2017) (unpublished). Aside from the fact that *Holloway* is unpublished and lacks any precedential value, it is inconsistent with *Faircloth*, *Morris*, *Jordan*, and *Brooks* and, for that reason, offers minimal support for a decision adhering to *Hall*.

has been committed" or, "[i]n other words, the proof does not fit the allegation")
(emphasis in original).

### III.    Conclusion

¶ 47          Thus, for the reasons set forth above, we hold that the trial court erred by
denying defendant's motion to dismiss the second first-degree kidnapping charge that
had been lodged against defendant given that the evidence elicited at trial, when
taken in the light most favorable to the State, did not support a finding that
defendant had committed the crime alleged in the indictment.  As a result, we affirm
the decision of the Court of Appeals and remand this case to the Court of Appeals for
further remand to the trial court for additional proceedings not inconsistent with this
opinion.

AFFIRMED.

Chief Justice NEWBY dissenting.

¶ 48     This case requires us to determine whether the trial court erred when it denied defendant's motion to dismiss a kidnapping charge. This Court affirms a trial court's denial of a motion to dismiss if, when viewed in the light most favorable to the State, there is substantial evidence that the defendant committed each essential element of the charged crime. The essential element at issue in the present case is whether defendant kidnapped the victim for the purpose of facilitating the commission of rape. Based on our current case law, the record evidence is sufficient to allow a rational juror to conclude that the second kidnapping facilitated the rape. Thus, the trial court's denial of defendant's motion to dismiss should be affirmed. Nevertheless, the majority overrules forty years of precedent to reach its decision to affirm the Court of Appeals' reversal of defendant's conviction. I respectfully dissent.

¶ 49     Defendant broke into the 80-year-old victim's house through the front door and kidnapped the victim by forcibly moving her to a bedroom. Defendant raped the victim in the bedroom and kidnapped her again by moving her to a different bedroom and tying her to a chair. The victim told defendant that her daughter was on the way, and defendant responded that if the victim's daughter arrived while he was still there, he would kill the victim. Defendant barricaded the bedroom door and told the victim that she better not come out until he was finished taking a shower. The victim

eventually escaped from the bedroom to find the shower still running, but defendant had already left the house.

¶ 50        Defendant was charged, *inter alia*, with one count of first-degree rape and two counts of first-degree kidnapping. The indictment provides as follows regarding the kidnapping charges:

> II. And the jurors for the State upon their oath present that on or about the date(s) of offense shown and in the county named above [defendant] unlawfully, willfully and feloniously did
>
> kidnap [the victim], a person who had attained and the age of 16 years, by unlawfully confining, restraining and removing her from one place to another without her consent and for the purpose of facilitating the commission of a felony, first[-]degree rape, by moving [the victim] from the kitchen to the back bedroom. [The victim] was not released by . . . defendant in a safe place and was bruised.
>
> III. And the jurors for the State upon their oath present that on or about the date(s) of offense shown and in the county named above [defendant] unlawfully, willfully and feloniously did
>
> kidnap [the victim], a person who had attained and the age of 16 years, by unlawfully confining, restraining and removing her from one place to another without her consent and for the purpose of facilitating the commission of a felony, first[-]degree rape, by moving [the victim] from the back bedroom to another bedroom and put her into a closet. [The victim] was not released by . . . defendant and she was forcibly confined to a closet until she freed herself sometime after . . . defendant left.

Defendant moved to dismiss the second kidnapping charge. The trial court denied defendant's motion, and the jury found defendant guilty on all counts. Defendant

appealed.

On appeal the Court of Appeals reasoned that this case's outcome should be controlled by its prior decision in *State v. Morris*, 147 N.C. App. 247, 555 S.E.2d 353 (2001), *aff'd per curiam*, 355 N.C. 488, 562 S.E.2d 421 (2002). *State v. Elder*, 278 N.C. App. 493, 2021-NCCOA-350, ¶ 36 (citing *Morris*, 147 N.C. App. at 248–49, 555 S.E.2d at 353–54 (reversing the defendant's kidnapping conviction when the State alleged that the defendant kidnapped the victim to facilitate a rape, but the evidence tended to show only that the defendant kidnapped the victim to facilitate flight)). The Court of Appeals also cited its prior decision in *State v. Jordan*, 186 N.C. App. 576, 651 S.E.2d 917 (2007), for the proposition that "the felony that is the alleged purpose of the kidnapping must occur after the kidnapping." *Elder*, ¶ 34 (quoting *Jordan*, 186 N.C. App. at 584, 651 S.E.2d at 922). Therefore, according to the Court of Appeals majority, because defendant had already completed the rape when he moved the victim from the first bedroom to the second bedroom, defendant could not have moved the victim for the purpose of facilitating the rape. *Id.* ¶ 32. The Court of Appeals thus reversed defendant's second kidnapping conviction. *Id.*

The dissenting opinion at the Court of Appeals, however, relying on an older, authored opinion from this Court, noted that "[t]he occurrence of all essential elements of a crime does not mean the commission of a crime ceases." *Id.* ¶ 89 (Tyson, J., concurring in part and dissenting in part) (citing *State v. Hall*, 305 N.C. 77, 82–

83, 286 S.E.2d 552, 556 (1982), *overruled on other grounds by State v. Diaz*, 317 N.C. 545, 346 S.E.2d 488 (1986)). According to the dissenting opinion, the trial court did not err in denying defendant's motion to dismiss the second kidnapping charge because the second kidnapping facilitated the commission of the rape by preventing the victim from contacting help or fleeing, prolonging the victim's pain and trauma, and allowing defendant an opportunity to destroy evidence. *Id.* ¶ 92. As such, the dissenting opinion would have found no error in defendant's second kidnapping conviction. *Id.* ¶ 94. The State appealed to this Court based upon the dissenting opinion at the Court of Appeals.

¶ 53        The task here is to determine whether the trial court erred in denying defendant's motion to dismiss the second kidnapping charge. This Court reviews a trial court's denial of a motion to dismiss de novo. *State v. Blagg*, 377 N.C. 482, 2021-NCSC-66, ¶ 10 (quoting *State v. Golder*, 374 N.C. 238, 250, 839 S.E.2d 782, 790 (2020)). "In ruling on a motion to dismiss, the trial court need determine only whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator." *Id.* (quoting *Golder*, 374 N.C. at 249, 839 S.E.2d at 790). Substantial evidence only requires "more than a scintilla of evidence," *State v. Earnhardt*, 307 N.C. 62, 66, 296 S.E.2d 649, 652 (1982), or "the amount necessary to persuade a rational juror to accept a conclusion," *Blagg*, ¶ 10 (quoting *Golder*, 374 N.C. at 249, 839 S.E.2d at 790). "In evaluating the sufficiency of the evidence to

support a criminal conviction, the evidence must be considered in the light most

favorable to the State; the State is entitled to every reasonable intendment and every

reasonable inference to be drawn therefrom." *Id.* (quoting *Golder*, 374 N.C. at 249–50,

839 S.E.2d at 790).

¶ 54        At the time of defendant's crimes, kidnapping was defined as follows:

> (a) Any person who shall unlawfully confine, restrain, or
> remove from one place to another, any other person
> 16 years of age or over without the consent of such person,
> or any other person under the age of 16 years without the
> consent of a parent or legal custodian of such person, shall
> be guilty of kidnapping if such confinement, restraint or
> removal is for the purpose of:
>         . . . .
>
> (2) Facilitating the commission of any felony or
>     facilitating flight of any person following the
>     commission of a felony[.]

N.C.G.S. § 14-39 (2021). "Facilitate" simply means to make the commission of the

crime easier. *State v. Kyle*, 333 N.C. 687, 694, 430 S.E.2d 412, 415–16 (1993).

¶ 55        "It has long been the law of this state that a defendant must be convicted, if

convicted at all, of the particular offense charged in the warrant or bill of indictment."

*State v. Faircloth*, 297 N.C. 100, 107, 253 S.E.2d 890, 894 (1979). The indictment in

the present case stated that defendant committed the second kidnapping "for the

purpose of facilitating the commission of a felony, first[-]degree rape, by moving [the

victim] from the back bedroom to another bedroom." Therefore, the relevant question

is whether substantial evidence shows that the second kidnapping facilitated, or

made easier, the commission of the rape.

The majority contends that a kidnapping cannot facilitate a rape that has already occurred. Our long-standing case law, however, holds that an act can facilitate the commission of a crime even if the act occurs after the elements of the crime have all been met. *See Hall*, 305 N.C. at 82–83, 286 S.E.2d at 556 ("[T]he fact that all essential elements of a crime have arisen does not mean the crime is no longer being committed. That the crime was 'complete' does not mean it was completed."); *Kyle*, 333 N.C. at 694, 430 S.E.2d at 415–16 (noting that an act "facilitate[s]" a crime if it makes the crime "easier").

Forty years ago, this Court decided a similar case. In *Hall* the defendant sought to reverse his kidnapping conviction, arguing that the State failed to prove the theory charged in the indictment—i.e., that the defendant kidnapped the victim for the purpose of facilitating the commission of armed robbery. *Hall*, 305 N.C. at 82, 286 S.E.2d at 555. The defendant contended there was a fatal variance in the indictment because he kidnapped the victim to facilitate his flight rather than the commission of the armed robbery. *Id.* We rejected the defendant's argument and explained that

> [t]he purposes specified in [N.C.]G.S. [§] 14-39(a) are not mutually exclusive. A single kidnapping may be for the dual purposes of using the victim as a hostage or shield and for facilitating flight, or for the purposes of facilitating the commission of a felony and doing serious bodily harm to the victim. So long as the evidence proves the purpose charged in the indictment, the fact that it also shows the kidnapping was effectuated for another purpose

enumerated in [N.C.]G.S. [§] 14-39(a) is immaterial and
may be disregarded.

*Id.* Thus, we determined that the defendant kidnapped the victim both for the
purpose of facilitating the armed robbery and for the purpose of facilitating flight. *Id.*

¶ 58        The defendant in *Hall* also contended that the kidnapping could not have
facilitated the armed robbery because the armed robbery was already complete when
the kidnapping occurred. *Id.* We again rejected the defendant's argument and further
explained that "the fact that all essential elements of a crime have arisen does not
mean the crime is no longer being committed. That the crime was 'complete' does not
mean it was completed." *Id.* at 82–83, 286 S.E.2d at 556. Therefore, we found no error
in the defendant's kidnapping conviction. *Id.* at 83, 286 S.E.2d at 556.

¶ 59        Similarly, nearly thirty years ago in *Kyle* the indictment charged that the
defendant kidnapped the victim "for the purpose of facilitating the commission of the
felonies of murder and burglary, and facilitating the flight of [the defendant]
following his participation in the commission of the felonies of burglary and murder."
*Kyle*, 333 N.C. at 693, 430 S.E.2d at 415. The defendant argued that the burglary was
complete upon his entrance into the house and that the subsequent kidnapping thus
could not have facilitated the commission of the burglary. *Id.* at 695, 430 S.E.2d at
416. We rejected the defendant's contention and cited *Hall* for the proposition that
"the fact that all the essential elements of a crime have arisen does not mean the
crime is no longer being committed. That the crime was 'complete' does not mean it

was completed." *Id.* (quoting *Hall*, 305 N.C. at 82–83, 286 S.E.2d at 556).[1] We then

provided the following analysis:

> [T]he evidence shows that, once [the] defendant entered
> the apartment, he waved the gun around and backed [the
> victim] and her son . . . up against a side wall in the living
> room. [The d]efendant was standing between the victim
> and the door to the apartment. Restraining the victim and
> her son in her apartment in this manner made the crime of
> burglary easier by enabling [the] defendant to carry out his
> felonious intent. If [the] defendant had not restrained the
> victim and had instead allowed her to flee from his
> presence, he may not have completed his intent to kill her.

*Id.* Thus, we concluded that the evidence supported a reasonable inference that the

defendant kidnapped the victim for the purpose of facilitating his commission of

murder and burglary. *Id.* at 696, 430 S.E.2d at 417.

¶ 60       Here there is substantial evidence that the second kidnapping facilitated

defendant's commission of the rape, as well as facilitating flight. Just as the

kidnapping in *Kyle* "made the crime of burglary easier by enabling [the] defendant to

carry out his felonious intent," *Kyle*, 333 N.C. at 695, 430 S.E.2d at 416, the second

kidnapping in the present case made the crime of rape easier by allowing defendant

the opportunity to shower and destroy evidence before the victim could seek help. The

---

[1] We recognized in *Kyle* that *Hall* had been overruled on other grounds by *Diaz*, 317 N.C. 545, 346 S.E.2d 488. *See Kyle*, 333 N.C. at 695, 430 S.E.2d at 416. Our decision in *Diaz* did not overrule our determination in *Hall* that "the fact that all the essential elements of a crime have arisen does not mean the crime is no longer being committed." *See id.* (quoting *Hall*, 305 N.C. at 82–83, 286 S.E.2d at 556). In footnote 7, the majority in this case concedes that this is a correct understanding of the case law.

second kidnapping also prolonged the victim's torment because defendant's use of threat and force continued. Though the elements of rape were already satisfied at the time of the second kidnapping, "the fact that all essential elements of a crime have arisen does not mean the crime is no longer being committed. That the crime was 'complete' does not mean it was completed." *Hall*, 305 N.C. at 82–83, 286 S.E.2d at 556. Therefore, under *Hall* and *Kyle*, the evidence in the present case, viewed in the light most favorable to the State, is sufficient to allow a rational juror to conclude that the second kidnapping facilitated the commission of the rape. The trial court thus did not err in denying defendant's motion to dismiss the second kidnapping charge.

¶ 61        Now the majority overrules this binding precedent of forty years in *Hall* and its progeny. Instead, the majority concludes that our decision here is controlled by a per curiam affirmance of the Court of Appeals' decision in *Morris*.[2] *See Morris*, 355 N.C. 488, 562 S.E.2d 421. The majority relies on a per curiam opinion despite it being well understood that an authored opinion should be given more weight than a per curiam opinion.

¶ 62        Further, the facts in *Morris* are distinguishable from those in the present case. In *Morris* the defendant knocked the victim unconscious and raped her. *Morris*, 147

---

[2] Interestingly, in a different opinion released today, the same majority gives less weight to a per curiam opinion than to an authored opinion. *See Cedarbrook Residential Ctr., Inc. v. N.C. Dep't of Health & Hum. Servs.*, 2022-NCSC-120.

N.C. App. at 248–49, 555 S.E.2d at 354. The victim awoke during the rape, but the defendant knocked her unconscious again. *Id.* When the victim awoke for the second time, she was locked in a storage closet. *Id.* at 249, 555 S.E.2d at 354. Defendant was charged with second-degree rape and second-degree kidnapping. *Id.* at 248, 555 S.E.2d at 353. The indictment stated that the defendant kidnapped the victim "for the purpose of facilitating the commission of a felony." *Id.* at 250, 555 S.E.2d at 355. The trial court denied the defendant's motion to dismiss the second-degree kidnapping charge, *id.* at 250, 555 S.E.2d at 354, and a jury found the defendant guilty of both charges, *id.* at 248, 555 S.E.2d at 353. The defendant argued to the Court of Appeals that the trial court erred by denying his motion to dismiss because the evidence was insufficient to show he kidnapped the victim for the purpose of facilitating the rape. *Id.* at 250, 555 S.E.2d at 354.

¶ 63    The Court of Appeals agreed with our explanation in *Kyle* that " 'to facilitate' means 'to make easier' " but concluded that the facts before it did not support the theory that the kidnapping made the rape easier. *Id.* at 252, 555 S.E.2d at 356 (quoting *Kyle*, 333 N.C. at 694, 430 S.E.2d at 415–16). Specifically, the Court of Appeals reasoned as follows:

> While there is little question [the] defendant's actions made his flight from the scene easier and was an attempt to cover up his act, the removal of the victim to the storage closet in no way made [the] defendant's rape of her easier, as all the elements of rape were completed before the removal. Again, defendant's actions possibly would support

> a conviction of second[-]degree kidnapping for the purpose
> of facilitating his flight from the commission of a rape;
> however, the State has failed to carry its burden in proving
> [the] defendant's actions facilitated [the] defendant's
> commission of the actual rape.

*Id.* at 252–53, 555 S.E.2d at 356. Thus, the Court of Appeals reversed the defendant's

kidnapping conviction. *Id.* at 253, 555 S.E.2d at 356. We then issued a per curiam

opinion affirming the Court of Appeals' decision. *See Morris*, 355 N.C. 488, 562 S.E.2d

421.

¶ 64        The majority's reliance on our per curiam affirmance in *Morris* to decide the

present case is misguided. First, by its very nature, a per curiam affirmance does not

articulate any reasoning to support the decision. Further, unlike in *Morris*, the record

evidence here, viewed in the light most favorable to the State, shows that the second

kidnapping made the rape easier. Specifically, the primary purpose of the second

kidnapping was to allow defendant to remain in the victim's house for a longer period

in order to destroy evidence. Moreover, defendant tied the victim to a chair and moved

her to the second bedroom immediately after raping her and while she was conscious.

These facts demonstrate the victim's continued torment and defendant's continued

use of threat or force. Because such evidence was lacking in *Morris*, that case is

distinguishable and thus should not control the outcome of the present case.

¶ 65        In summary, an act "facilitates" a crime when it makes that crime easier. *See*

*Kyle*, 333 N.C. at 694, 430 S.E.2d at 415–16. Further, our long-standing case law

establishes that a subsequent act can make a crime easier because "the fact that all essential elements of a crime have arisen does not mean the crime is no longer being committed. That the crime was 'complete' does not mean it was completed." *Hall*, 305 N.C. at 82–83, 286 S.E.2d at 556. Here defendant kidnapped the victim after raping her so that he could take a shower and destroy evidence. These facts are sufficient for a rational juror to conclude that the second kidnapping made the rape easier. The trial court thus properly denied defendant's motion to dismiss the second kidnapping charge. To reach its decision to affirm the Court of Appeals' reversal of defendant's conviction, the majority today overrules forty years of precedent. I respectfully dissent.

Justice BERGER joins in this dissenting opinion.